**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PATRICIA A. MASTRO,
　　　　　　*Plaintiff-Appellant,*

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
　　　　　　*Defendant-Appellee.*

No. 00-1105

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CA-99-11-2-T)

Argued: November 1, 2000

Decided: July 5, 2001

Before LUTTIG and TRAXLER, Circuit Judges, and
Alexander WILLIAMS, Jr., United States District Judge
for the District of Maryland, sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Jimmy Alan Pettus, Charlotte, North Carolina, for Appellant. Joseph L. Brinkley, Assistant United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Patricia Mastro, Appellant, challenges the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. Her claimed disability is Chronic Fatigue Immune Dysfunction Syndrome ("CFIDS"), also known as Chronic Fatigue Syndrome ("CFS"). After a hearing, the administrative law judge (ALJ) ruled that Ms. Mastro was not entitled to a period of disability or disability insurance under §§ 216(1) and 223 of the Social Security Act ("the Act"), nor was she eligible for supplemental security income under §§ 1602 and 1614(a)(3)(A) of the Act. Ms. Mastro's appeal of this decision was denied by the Appeals Council. She then sought judicial review. Upon reviewing cross-motions for summary judgment, the District Court of North Carolina granted the Commissioner's motion and denied Ms. Mastro's motion. For the reasons discussed below, we affirm the ALJ's findings and his determination that Ms. Mastro is not disabled under the Act.

## I.  *FACTUAL BACKGROUND*

Patricia Mastro is a female over the age of 55. From 1978 to 1994, Ms. Mastro worked in a number of occupations, including administrative, service, property and restaurant management positions. Her last full-time position, as a secretary, ended in April 1992. Thereafter, she was employed part-time as a driver and a store manager. In September 1994, she resigned from her position as a waitress after six weeks on the job. Thereafter, Ms. Mastro stopped working completely. Ms. Mastro first applied for social security disability benefits and supplemental security income on June 5, 1995. She alleged the disability of CFS, with the date of disability commencing on April 1, 1992. According to Ms. Mastro, she began experiencing symptoms of CFS as early as October 1985. Her medical history is summarized below.

A.   *Medical History*

In February 1986, Dr. Michael Morkis treated Ms. Mastro for a benign adenoma which led to the surgical excision of a left facial tumor. A year later, in March of 1987, Ms. Mastro was diagnosed with menomenorrhagia, fibroids, adhesions, hydrosalpinx, and chronic endometris. The medical records from these procedures revealed no complaints of chronic fatigue or other symptoms of CFS in the pre- or post-operative treatment.

From August 1988 through September 1993, Ms. Mastro sought treatment at a Florida hospital on approximately six occasions. In August 1988, Ms. Mastro complained of chest and neck soreness in the aftermath of a motor vehicle accident. Upon her second visit, she reported that her condition had improved. She was physically examined and diagnosed with degenerative arthritis. Two years later, in June 1990, Ms. Mastro was treated by Dr. Edward Cabrera on two occasions. Her reported complaints included being very tired, dull chest pain, dizziness, and bilateral arm pain. Dr. Cabrera's observations included scattered rhonchi, decreased breath sounds, and midepigastric tenderness. He noted that Ms. Mastro experienced decreased cognitive functioning and confusion as well. Based upon his observations and Ms. Mastro's reported symptoms, Dr. Cabrera diagnosed Ms. Mastro with CFS by history. Dr. Cabrera's examination also produced an abnormal thyroid test. Dr. Cabrera prescribed Prozac and Klonopin. On a follow-up visit two weeks later, Ms. Mastro did not complain of any further CFS symptoms. In October 1992, Ms. Mastro sought treatment for migraine headaches and was prescribed medication. In a gynecological examination performed that same month, Ms. Mastro complained of tiredness to a Dr. Phillips. In December 1992, Ms. Mastro complained of abdominal discomfort and was treated for diarrhea. A year later, in September 1993, Ms. Mastro underwent another physical examination. She reported being tired and having CFS.

In September 1994, Ms. Mastro was treated for dizziness and chest pains. The tests performed revealed normal results. In January 1995, Ms. Mastro sought treatment from Dr. J.F. Templeman. In the course of her treatment, she reported symptoms that included: fatigue, migraines, restless legs, depression, insomnia, rashes, sinus problems,

CFS, chest pains, yeast infections, and migratory joint pains. Dr. Templeman diagnosed her with costochondritis, restless leg syndrome, and CFS. In June 1995, Ms. Mastro underwent another physical examination reporting symptoms such as chronic fatigue, insomnia, and restless legs. The physical examination did not reveal any abnormal conditions.

In November 1995, Ms. Mastro sought treatment for migraine headaches, depression, and upper body discomfort aggravated by movement or coughing. Dr. John S. Muller, a clinical psychologist, performed a psychological examination on Ms. Mastro. The administered intelligence test revealed that Ms. Mastro was of average intelligence. Dr. Muller described Ms. Mastro as "alert and oriented" with no noticeable depressive affect. However, Dr. Muller summarized her condition as symptomatic of CFS. He noted that she suffered from a low energy level and that she lost four jobs due to CFS symptoms, such as fatigue, falling asleep on the job, and absenteeism. In 1996, Ms. Mastro was treated by Dr. Rick Pekarek for cellulitis with lymphangitis that developed from a knee scratch. She reported symptoms of CFS. In July 1996, Ms. Mastro was treated for gastritis, diarrhea, and a yeast infection. Each of these conditions was treated by different medications.

In March 1997, Dr. Charles E. Fitzgerald examined Ms. Mastro. He found that, although Ms. Mastro's reported symptoms were consistent with CFS, she suffered from no physical impairment that would limit her activities. In a letter dated that same year, Dr. Templeman reiterated his opinion that Ms. Mastro suffered from CFS and that the condition prevented her from working productively. Dr. Templeman noted that, "based upon her history, [Ms. Mastro] would be unable medically to work or study on a regular basis. A few hours of effort at a time would be all she is capable of and this on an irregular basis." (Appellant's Br. at 6.) Dr. Templeman's diagnosis was based upon Ms. Mastro's past medical history and her reported symptoms over the course of her treatment.

### B.   *Subjective Complaints and Daily Activities*

In Dr. Muller's psychological evaluation, Ms. Mastro reported that she suffered from depression due to her CFS. She claimed that, in

January 1986, she was diagnosed with Epstin-Barr disorder (a prior term used to describe CFS). However, no medical records from the 1986 surgery substantiate this claim. Although her employment included secretarial and management positions, she reported that she could not retain her job as a secretary because she "found it difficult to remember [tasks] and occasionally fell asleep at her desk." (J.A. at 218.) She described her sleep patterns as erratic with bouts of insomnia. On a typical day, she may read a book, write a letter, sew, or watch television. However, Ms. Mastro claimed that she engages in these activities less frequently and for shorter periods due to her diminished concentration. She reported taking two naps a day lasting approximately fifteen minutes to two hours. She occasionally cooks simple meals for herself and her roommate. She can perform light housework, such as dry mopping and dusting. In her testimony at the ALJ hearing, Ms. Mastro stated that the extent of her daily activities depends on whether she had a good day or a bad day. She testified that, even if she has a "good" day, it is typically followed by two or three "bad" days. According to her testimony, on her worst days, Ms. Mastro does not have the energy to shower, read, or watch television. She remains in bed and sleeps. She complained that she cannot sit for more than thirty minutes or stand in excess of twenty minutes without experiencing pain and fatigue.

## C. *ALJ Findings*

The ALJ found that the medical examinations of Ms. Mastro prior to 1995 did not support her subjective complaints of pain and fatigue. The ALJ noted that Ms. Mastro's history of CFS was based on her own subjective complaints of pain and fatigue and no doctor found a definitive basis for diagnosing her with CFS. From this, the ALJ stated that "it is clear that the claimant has no impairment or combination of impairments" entitling her to social security disability benefits. (J.A. at 27.) Further, the ALJ reasoned that the objective medical evidence and Ms. Mastro's daily life activities indicated that she could continue to perform past relevant work, particularly management positions. Given these findings, the ALJ denied her disability claim. Additionally, the ALJ found no evidence of a medically determinable mental impairment.

As grounds for reversal, Ms. Mastro contends that the ALJ erroneously ignored the opinion of her treating physician and her subjective

complaints of chronic fatigue and pain. The Commissioner does not dispute that Ms. Mastro suffers from a severe impairment. Rather, the Commissioner maintains that the ALJ's findings that Ms. Mastro's impairment was not among the listed impairments recognized as disabling and that the impairment did not limit her from engaging in certain past employment, such as real estate management, are supported by substantial evidence and based upon the correct application of law.

## II.  *DISCUSSION*

This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C. § 405(g) and § 1383(c)(3). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589.

Sections 216(i) and 1614(a)(3) of the Act define "disability" as the inability to engage in any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment (or combination of impairments) which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423 (d)(1)(A). In Social Security Ruling (SSR) 99-2p, the Commissioner definitively stated that, when accompanied by appropriate medical signs or laboratory findings, CFS can be a medically determinable impairment. SSR 99-2p, Titles II and XVI: Evaluating Cases Involving Chronic Fatigue Syndrome (CFS), 64 Fed. Reg. 23380, 23381 (April 30, 1999) (hereinafter "SSR 99-2p"). The ruling defines CFS as:

> a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity . . . char-

acterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities.

SSR 99-2p, 64 Fed. Reg. at 23381. The ruling instructs that, before rejecting a claim based on CFS, the ALJ must first consider the medical evidence and evaluate the condition as any other unlisted impairment. Therefore, the CFS claim is analyzed under the same five step framework applied to every social security disability claim. *See* 20 C.F.R. § 416.920.

The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

While the Act and regulations require that an impairment be established by objective medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms, 42 U.S.C. § 423(d)(5)(A), the Commissioner recognizes that "no specific etiology or pathology has yet been established for CFS." SSR 99-2p, 64 Fed. Reg. at 23381. Still, the Commissioner's directive in SSR 99-2p explicitly requires a CFS disability claim to be accompanied by medical signs or laboratory findings. SSR 99-2p, 64 Fed. Reg. at 23381. Recognized examples of medical signs, clinically documented over a period of at least 6 consecutive months, that will establish the existence of a medically determinable impairment include: palpably swollen or tender lymph nodes

on physical examination; nonexudative pharyngitis; persistent, reproducible muscle tenderness on repeated examinations or any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record. SSR 99-2p, 64 Fed. Reg. at 23382. Accordingly, to support an award of benefits, the medical signs must fall within the listed physical symptoms or be consistent with medically accepted clinical practice and the other evidence in the record. Furthermore, these symptoms must have been clinically documented over a period of at least six consecutive months. In the present case, we conclude the ALJ properly took such issues into consideration in coming to his conclusion that Ms. Mastro did not establish an entitlement to benefits.

## A.  *Severity of Impairment*

While the ALJ found that Ms. Mastro suffered from CFS, he concluded that her impairment was not sufficiently severe to equal or exceed any impairment or combination of impairments listed in Appendix I, Subpart P, Regulations No. 4. The ALJ based his decision on the fact that Ms. Mastro's CFS history was based largely on her own subjective complaints of muscle aches, pain, weakness, and fatigue. The ALJ also pointed to the lack of a definitive basis for any doctor's diagnosis for CFS.

As initial grounds for error, Ms. Mastro maintains that the ALJ erred in rejecting the testimony of her treating physician, Dr. Templeman. The Commissioner argues that the ALJ correctly afforded the medical opinion of Dr. Templeman little weight given that he based his opinion on the subjective complaints of Ms. Mastro without sufficient evidence to substantiate her claims. "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, according to the regulations promulgated by the Commissioner, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R § 416.927. Thus, "[b]y negative implication, if a physician's opinion

is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. *See Hunter*, 993 F.2d at 35.

We find the record adequately supports the ALJ's decision to attribute greater weight to Dr. Fitzgerald's opinion over Dr. Templeman's finding of disability. First, Dr. Templeman's opinion was communicated a year after his last treatment of Ms. Mastro. Second, the Commissioner's ruling on CFS advises that "a physician should make a diagnosis of CFS 'only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded.'" SSR 99-2p, 64 Fed. Reg. at 23381 (quoting Annals of Internal Medicine, 121:953-9, 1994). Dr. Templeman's diagnosis was based largely upon the claimant's self-reported symptoms. Ms. Mastro's laboratory tests and medical examinations were within normal parameters. No other doctor that examined Ms. Mastro was of the opinion that she was disabled. The specified reasons of the ALJ properly considered the absence of clinically documented medical evidence. We find no error in the ALJ's consideration of the year delay between Dr. Templeman's diagnosis of CFS and opinion of disability and the absence of supporting clinical documentation of symptoms. Such factors provide specific and legitimate grounds to reject a treating physician's opinion in the face of the conflicting evidence and the more contemporaneous medical opinion of Dr. Fitzgerald. Thus, we find no error in the ALJ's decision to not to give Dr. Templeman's opinion controlling weight.

Along similar lines, we agree that the substantial evidence supports the ALJ's findings as to the severity of Ms. Mastro's claimed impairment. Inasmuch as CFS is not a listed impairment, an individual with CFS alone cannot be found to have an impairment that meets the requirements of a listed impairment. SSR 99-p2, 64 Fed. Reg. at 23382. As Ms. Mastro's condition is not a listed impairment, the ALJ must determine whether her "symptoms, signs, and laboratory findings [were] medically equal to the symptoms, signs, and laboratory findings of a listed impairment" under Appendix I. 20 C.F.R. § 404.1529. Such impairments are "considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525.

"Medical equivalence must be based on medical findings . . . supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). An ALJ's evaluation of a claimant's subjective complaints of pain must "consider all . . . symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529. While Ms. Mastro argues that the ALJ's analysis is inconsistent with SSR 99p-2, the Commissioner's ruling on CFS still requires

> appropriate documentation . . . includ[ing] a longitudinal clinical record of at least 12 months prior to the date of application . . . . The record should contain detailed medical observations, treatment, the individual's response to treatment, and a detailed description of how the impairment limits the individual's ability to function over time.

SSR 99-2p, 64 Fed. Reg. at 23383. While Dr. Cabrera first diagnosed Ms. Mastro with CFS in June 1990, the record shows significant gaps in the claimant's treatment records until January 1995 when Dr. Templeman diagnosed Ms. Mastro with CFS. The medical records in October 1992, September 1993, and September 1994 show that Ms. Mastro's complaints of fatigue, insomnia and migraines had persisted over five years prior to her application in May 1995. Still, the record does not reveal the detailed clinical record contemplated for a medical diagnosis based upon symptoms. Rather, the record discloses a hodgepodge of medical observations and treatments with annual gaps showing no progression in Ms. Mastro's treatment. Furthermore, although Ms. Mastro contends that she sought treatment from Dr. Templeman 25 times, there is no detailed account of his medical observations, prescribed treatment, and Ms. Mastro's responses thereto. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Considering the paucity of medical evidence supporting her claim, we find that the ALJ applied the correct legal standard in assessing the extent of Ms. Mastro's impairment and finding that her condition was not equal to one or more impairments warranting a finding of disability.

### B.  *Past Relevant Work*

If a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function capacity ("RFC"). RFC assesses the "maximum degrees to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpart P, App.2 § 200.00(c). Ms. Mastro argues that the ALJ erred in finding that she could perform past relevant work. As support for his opinion that Ms. Mastro could perform past relevant work, the ALJ noted that Ms. Mastro was able to ride her bike, walk in the woods, and travel to places such as Indiana, Texas, and Georgia without significant difficulty. The ALJ reasoned that, in light of the negative clinical and laboratory findings, the daily life activities showed that Ms. Mastro's subjective complaints of pain and fatigue could not reasonably be expected in terms of intensity, frequency, or duration. We find that the ALJ correctly applied the law in concluding that Ms. Mastro's reported daily activities undermined her subjective complaints of chronic fatigue. We also agree that the determination is supported by the substantial evidence. The ALJ properly considered Ms. Mastro's reported activities, prior work history, and Dr. Fitzgerald's opinion in concluding that CFS did not limit Ms. Mastro's ability to work. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

After reviewing the record, we hold that the substantial evidence supports the ALJ's determination that Ms. Mastro is not disabled within the meaning of the Social Security Act. Accordingly, we affirm the district court's grant of summary judgment in favor of the Commissioner on the denial of disability benefits.

*AFFIRMED*