**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BRANDON GUY BRYANT, a minor by
his Guardian Ad Litem, Pamela
Bryant,
　　　　　*Plaintiff-Appellant,*

　　　　v.

JO ANNE BARNHART, Commissioner
of Social Security,
　　　　　*Defendant-Appellee.*

No. 02-1057

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CA-00-11-7-F)

Submitted: January 23, 2003

Decided: April 16, 2003

Before WILKINS, Chief Judge, and TRAXLER and
GREGORY, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Gregory wrote the opinion,
in which Chief Judge Wilkins and Judge Traxler joined.

---

## COUNSEL

William L. Davis, III, Lumberton, North Carolina, for Appellant.
John Stuart Bruce, United States Attorney, Barbara D. Kocher, Assistant United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

GREGORY, Circuit Judge:

Brandon Guy Bryant, a minor, appeals the decision of the United States District Court for the Eastern District of North Carolina affirming the denial of Supplemental Social Security Income benefits by the Commissioner of Social Security. For the reasons that follow, we affirm.

I.

Brandon's request for Supplemental Social Security Income ("SSI") benefits followed a history of emotional and behavioral difficulties. Born on July 1, 1986, Brandon was 12 years old at the time of his administrative hearing, and had received psychological care for approximately two years. His treating physician was Dr. Beyer of the Behavioral Medicine Center. During this time, Brandon had been diagnosed with attention deficit hyperactivity disorder ("ADHD") and depression, which were treated with Ritalin and Prozac. Although his condition responded well to these medications, Brandon suffered occasional setbacks. Overall, Brandon's academic performance, intelligence testing, psychological and behavioral reviews present a mixed record of normal functioning in some areas combined with meaningful limitations in others. In addition to his psychological care, Brandon was placed in a special academic environment for challenged children, which was coordinated by Shirley Stallings. Upon filing his application for SSI benefits, Brandon was examined by two state experts, Drs. Kay and Barry, who concluded that Brandon did not meet the thresholds for functionally based disability.

Brandon's mother, Mrs. Pamela Bryant ("Mrs. Bryant"), filed the application for Supplemental Social Security Income ("SSI") benefits on her son's behalf on March 24, 1997, alleging the existence of a disability beginning March 28, 1997 due to ADHD and depression.

After denial by the Commissioner of Social Security ("Commissioner"), which was upheld on review by an Administrative Law Judge ("ALJ"), and affirmed on appeal to the Appeals Council of the Social Security Administration, Brandon appealed the final administrative decision to the district court. The district court affirmed the ALJ's decision and dismissed the action on the pleadings. Brandon now seeks our review of the ALJ and district court holdings. For the reasons to follow, we deny this appeal and affirm the decision of the district court.

## II.

This Court has the authority to review the Commissioner's denial of social security benefits under the Social Security Act, 42 U.S.C. § 405(g). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). The substantial evidence rule is far more deferential than *de novo*: "it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (citation omitted). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (quoting *Craig*, 76 F.3d at 589). Finally, we review the ALJ's conclusions of law *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000).

## III.

This appeal presents two issues. First, we must determine whether the ALJ's decision was supported by substantial evidence. Second, we must determine whether the ALJ applied the correct standards of law in reaching his decision. We shall address each of these issues in turn.

## A.

In order to qualify for SSI benefits under the Social Security Act, a claimant must qualify as disabled. Pursuant to 42 U.S.C. § 1382c(a)(3)(C)(i):

> [A]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (2000).[1] Under Social Security Administration guidelines the Commissioner must follow a set order in evaluating a disability claim. 20 C.F.R. § 416.924 (1997). First, the Commissioner must determine whether the claimant has engaged in substantial gainful activity. *Id.* Second, if the claimant has not engaged in such activity, the Commissioner must consider the claimant's physical or mental impairments to determine whether such impairments are severe. *Id.* Third, if the impairment is severe, the Commissioner then determines whether the impairment meets, medically equals, or is functionally equal to a listed impairment. *Id.* Finally, and only when the Commissioner finds such an equivalency, is the impairment's duration considered. *Id.*

In this case, the ALJ determined that Brandon had not engaged in substantial gainful activity and that his impairments were severe for purposes of the sequential analysis. Accordingly, the ALJ turned to the questions of whether these severe impairments met, were medically, or functionally equivalent to the level of severity specified in

---

[1]Appellant assigns error to the district court's reliance upon provisions of the Code of Federal Regulations in effect in 2000, rather than those in effect at the time of the Administrative Law Judge's decision. Appellant is correct to argue that under the applicable regulations, a claimant's case should be reviewed under the rules in effect at the time of the final administrative decision. Supplemental Security Income, Determining Disability for a Child Under Age 18, 65 Fed. Reg. 54747, 54751 (September 11, 2000). However, a comparative review of the 1997 and 2000 versions of the regulations cited by the district court reveals that, in the only instance in which a change occurred, that change incorporated a Social Security Ruling upon which both the ALJ and district court had relied in reaching their decisions. Hence, the incorporation of the ruling in no way changed the applicable standard of legal review and rendered harmless any error that might have resulted thereby.

Appendix 1 to Subpart P of the Social Security Regulations, No. 4. Here, the ALJ found that Brandon's limitations did not meet, nor were they medically equal to a listed impairment.

Given the absence of medical equivalence, the Commissioner next considered functional equivalence. Here, the Commissioner assesses all functional limitations caused by the impairment to determine whether the impairment is functionally equivalent in severity to any listed impairment that includes disabling functional limitations in its criteria. 20 C.F.R. § 416.926a(a) (1997). At issue in the present case is the ALJ's analysis of the genre known as "broad areas of development or functioning." Here, as opposed to considering limitations upon specific activities such as walking, the Commissioner is directed to examine broader areas of functioning. These functions are: 1) cognition/communication; 2) motor; 3) social; 4) personal; and 5) concentration, persistence and pace ("CPP"). 20 C.F.R. § 416.926a(c) (5)(v) (1997). To qualify as functionally limited, the claimant must display either "marked" limitations in two of these areas or an "extreme limitation" in one area. 20 C.F.R. § 416.926a(c) (1997). A "marked" limitation for an individual in Brandon's age range seriously interferes with the child's ability to function in that area. 20 C.F.R. § 416.926a(c)(3)(i) (1997). A limitation is "extreme" when it renders the individual incapable of meaningful function in that area. 20 C.F.R. § 416.926a(c)(3)(ii) (1997). The ALJ determined that none of Brandon's functional limitations met the threshold necessary to qualify for SSI benefits. Specifically, the ALJ determined:

> The claimant is moderately limited in the area of concentration, persistence, and pace and is moderately limited in the area of social functioning . . . . He is slightly less than moderately limited in the area of communicative/cognitive functioning . . . . The claimant does not appear to have any problems with motor functioning . . . . In addition, he does not appear to have any significant limitation in the area of personal functioning/development.

Hence, the question presented for review is whether these conclusions were supported by substantial evidence.

Although Brandon certainly suffers meaningful limitations, and while reasonable minds might differ in applying the functionality

analysis outlined above, there is substantial evidence in the record to support the ALJ's conclusion. Brandon argues that the ALJ based his conclusion "almost exclusively" upon the expert non-treating physician evaluations performed by Drs. Kay and Barry. As the district court correctly found, this argument is entirely without merit. The ALJ's decision contains an ample and thorough discussion of Brandon's supporting evidence. The ALJ reviewed and discussed Brandon's medical records, his mother's testimony and evidentiary submissions, reports by teachers and other corroborative evidence submitted on his behalf. In addition to discussing the non-treating expert reports, the ALJ evaluated the records of Brandon's treating physician and therapist, Dr. Beyer and Mr. Dennis Goodwin. Hence, there is no basis in the record to support an allegation of blind or exclusive reliance upon the non-treating expert reports.

The ALJ first found that Brandon suffered from an underlying impairment that could reasonably cause the symptoms alleged and found credible the supporting testimony offered at the hearing. However, under the applicable standards requiring the Commissioner to evaluate claims in light of the ameliorative effects of medication, the ALJ determined that Brandon's limitations did not meet or medically equal a listed impairment. As noted above, substantial evidence reveals the improvement of Brandon's condition after receiving Ritalin and Prozac. These improvements were noted by Brandon's mother, teachers and in his treating physician records.

The central area of controversy in this case lies in the determination of whether Brandon established "broad area" functional limitation sufficient to qualify as disabled. There is substantial evidence to support the ALJ's finding that he did not. Brandon's greatest difficulties lay in the areas of social functioning and CPP.[2] However, even

---

[2]The ALJ also addressed the other "broad areas" of functioning. There was little evidence of motor skill deficiency, as evidenced by Brandon's success in baseball, where he made the all-star team. In the area of cognition/communication, the record indicated slightly less than moderate limitation. Here, the ALJ considered Brandon's good IQ scores and academic reports regarding his effective communication. Finally, the record does not indicate any meaningful limitation in personal functioning, even though Brandon requires some degree of supervision to complete tasks, such as cleaning and food preparation.

in these trouble areas, he made significant progress after beginning treatment with Ritalin and Prozac. For example, Ms. Strickland's fifth grade report noted the student's effective communication skills, ability to follow directions, sustain focus and maintain successful peer relations. Brandon then ended the school year by making the honor roll. Although he clearly ran into frequent disciplinary trouble during the following year, Brandon's evaluations contained mixed impressions. For example, the report prepared by Ms. Stallings near the end of Brandon's sixth academic year indicated occasional problems with peer social interactions, difficulties with extended focus and difficulty comprehending too many messages at once. However, the same report also noted Brandon's ability to work fairly well in a structured setting, participate appropriately in class and communicate with his peers. *Id.*

Brandon places great emphasis upon the second report prepared by Ms. Stallings and her multi-disciplinary team. This report, prepared only one month later, noted consistent problems with peer relationships, poor socialization and a lack of proper judgment in social situations. *Id.* The report used terms such as "always" and "frequent" in describing the incidence of many of the behaviors associated with Brandon's impairments. *Id.* Brandon's brief lists the dictionary definitions of these terms and attempts to equate them with the meaning of "marked" and "extreme" limitations under the regulatory guidelines. However, as discussed above, the terms are defined in the guidelines and carry precise meanings. There is no basis to suggest that Brandon suffers an extreme limitation, and is therefore incapable of any meaningful function in any given area. Brandon may have suffered limitations that seriously interfered with his ability to function in a broad area, but reasonable minds could differ as to this conclusion.

Finally, the record of Brandon's treating physician and therapist, Dr. Beyer and Mr. Goodwin, does not offer dispositive proof of disability. A review of these records indicates mixed evidence of both progress and setbacks. For example, Dr. Beyer notes satisfaction with the patient's responses to Ritalin and Prozac, as well as Mrs. Bryant's positive feedback regarding her son's behavior. Of course, these records also note Bryant's frequent behavioral problems and emotional difficulties. As the non-treating experts concluded after their

review of the medical records, there is no clear proof of disability as defined under the guidelines.

In light of the ample evidence of progress and responsiveness to medication, there is substantial evidence to support the ALJ's denial of disability. The ALJ's decision considered all relevant evidence in the record and did not, as Brandon suggests, place undue weight upon any individual opinion. Again, there is much evidence of problematic behavior, but not enough to satisfy the exigencies of the Social Security Act.

## B.

As a second assignment of error, Brandon argues that the ALJ placed undue weight upon the non-treating expert reports. Brandon also argues that the ALJ ignored important evidence provided in intelligence testing and special education reports. As discussed above, these arguments rest upon the invalid factual premise that Dr. Beyer's records establish a clear case of disability under the Act. In fact, the medical records are *mixed*; they present evidence both of improvement in response to medications as well as evidence of recurring functional limitation. Hence, the record reveals no true conflict — and accordingly there is no undue weighing by the ALJ in favor of one side over the other — between the treating and non-treating physician evidence.

The ALJ considered these reports and test results in light of the entire record and reached a conclusion regarding their probative value supported by substantial evidence. Appellant is indeed correct in citing the rule that treating physician evidence must receive special consideration. *See, e.g.*, *Smith v. Shweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) ("While the Secretary is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence.") (citing *Mitchell v. Schewiker*, 699 F.2d 185, 187 (4th Cir. 1983)). With respect to non-treating source opinions, the ALJ must follow SSA rules requiring consideration of the background and expertise of the experts, the supporting evidence in the record for the

opinions and the consistency of the opinions. Social Security Ruling 96-6p, 1996 WL 374180, 1. Additionally, the ALJ must explain the weight accorded to non-treating sources. *Id.* What emerges from this scheme is a special consideration of treating physician opinion, but not blind adherence where contrary evidence is proffered. However, here again, we are presented with no such deliberative dilemma, as the record does not present a clash between Dr. Beyer's records and those of the non-treating sources. Hence, there is no true conflict of opinion to weigh and resolve.

## IV.

The ALJ and district court's findings regarding Brandon's disability status were clearly supported by substantial evidence. Furthermore, the ALJ applied the correct legal analysis to the disability determination and accorded appropriate weight where due. We therefore affirm the denial of benefits.

*AFFIRMED*