**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1503**

MELISSA BARBARE,

        Plaintiff – Appellant,

v.

ANDREW SAUL, Commissioner of Social Security Administration,

        Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Donald C. Coggins, Jr., District Judge.  (2:17-cv-02834-DCC)

Submitted:  May 6, 2020                       Decided:  June 18, 2020

Before WILKINSON and FLOYD, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge Floyd and Senior Judge Traxler joined.

Dana W. Duncan, DUNCAN DISABILITY LAW, S.C., Nekoosa, Wisconsin, for Appellant.  Sherri A. Lydon, United States Attorney, Marshall Prince, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina; Eric Kressman, Regional Chief Counsel, Thomas Moshang, III, Supervisory Attorney, Peter Colonna-Romano, Special Assistant United States Attorney, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Plaintiff Melissa Ann Barbare appeals a district court judgment upholding the Social Security Commissioner's denial of her claim for disability insurance benefits. The Commissioner denied benefits after concluding that Barbare was not disabled under the Social Security Act. Because this conclusion was supported by substantial evidence, we affirm the judgment below.

I.

In September 2013, Barbare applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of November 1, 2012. Relevant here, she based her disability claim on respiratory, digestive, and neurological impairments—namely, chronic obstructive pulmonary disease ("COPD"), collagenous colitis, and essential tremors.[1]

Barbare's disability claim was first denied in January 2014 and again denied on reconsideration in April 2014. She requested a hearing on her claim, which took place before an administrative law judge ("ALJ") in May 2016. In a decision released later that year, the ALJ held that Barbare "was not under a disability, as defined in the Social Security Act, at any time from November 1, 2012, the alleged onset date, through December 31, 2015, the date last insured." J.A. 19. Although the ALJ noted that Barbare suffered several severe impairments, he found that she was able to perform certain sedentary work,

---

[1] Barbare also based her disability claim on depression and anxiety, but her appeal does not relate to these conditions.

3

including several jobs she'd held in the past. The Appeals Council denied Barbare's request for review, making the ALJ's decision "the final decision of the Commissioner of Social Security." A.R. 2. Barbare sought judicial review of the Commissioner's decision, alleging that the ALJ had not properly weighed the opinions of several physicians.

A magistrate judge issued a report recommending that the Commissioner's decision be affirmed. This report concluded that the ALJ's weighing of the various physician opinions was supported by substantial evidence and based on application of proper legal standards. The district court agreed with the magistrate judge's assessment. The court adopted the magistrate judge's report, incorporated its findings, and affirmed the Commissioner's decision to deny benefits. Barbare appealed.

## II.

### A.

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An ALJ determining whether a claimant is disabled, and thus eligible for disability insurance benefits, follows a five-step inquiry. *Monroe v. Colvin*, 826 F.3d 176, 178-79 (4th Cir. 2016); *see also* 20 C.F.R. § 404.1520(a)(4). This inquiry, performed sequentially, examines whether a claimant:

> (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of

4

a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

*Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The burden of proof falls on a claimant at Steps 1-4, but shifts to the Commissioner at Step 5. *Id.* at 472-73. "If an individual is found not disabled at any step, further inquiry is unnecessary." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also* 20 C.F.R. § 404.1520(a)(4).

B.

When evaluating Barbare's claim, the ALJ proceeded through the five-step inquiry outlined above. At Step 1, he found that Barbare was not employed during her alleged disability period. At Step 2, he concluded that Barbare suffered several severe impairments: COPD, collagenous colitis, and essential tremors. And at Step 3, he determined that Barbare "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in [the relevant regulations]." J.A. 10. That still left the question, however, of Barbare's residual functional capacity.

In order to perform Steps 4 and 5, the ALJ evaluated Barbare's residual functional capacity, that is, "the maximum degrees to which [she] retains the capacity for sustained performance of the physical—mental requirements of jobs." *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quotation omitted); *see also* 20 C.F.R. § 404.1520(e). The ALJ found that Barbare "had the residual functional capacity to perform sedentary work" subject to certain limitations. J.A. 10. At Step 4, he held that Barbare was capable of performing several jobs she'd held in the past. Although the ALJ could have ended his inquiry there,

5

at Step 5 he held in the alternative that Barbare could perform other work available in the national economy.

Barbare disagrees with the ALJ's ultimate decision that she was not disabled. Although she does not frame her arguments in the context of the five-step inquiry, her dispute centers on the ALJ's conclusion that she retained the ability to do some sedentary work. For the reasons set forth below, we decline to disturb the ALJ's well-supported findings.

III.

A.

Our task here is a narrow one. "Judicial review of a final decision regarding disability benefits under the Social Security Act . . . is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* 42 U.S.C. § 405(g).

Substantial evidence is a deferential standard. "It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quotation omitted). Put differently, substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).

The deference owed under the substantial evidence standard dictates the limited nature of the task before us. "In reviewing for substantial evidence, we do not undertake to

6

re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quotation omitted).

B.

Barbare alleges that the ALJ's residual functional capacity conclusion was flawed because he failed to fully credit the opinions of several treating physicians—opinions which suggested she was incapable of performing even sedentary work. Specifically, Barbare argues that the ALJ erred by assigning "little" or "partial" weight to the opinions of Dr. James R. Bloodworth, Dr. Catherine Chang, Dr. Michael I. Rickoff, and Dr. Fredy Revilla. *See* J.A. 15-16. Barbare also disagrees with the ALJ's decision to assign "great" weight to the opinion of Dr. Travis Greer, a pulmonary specialist who opined that she was capable of performing sedentary work. *See* J.A. 16.

To proceed, we must consider the treating-physician rule.[2] Under this rule:

> If [the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, [the ALJ] will give it controlling weight.

---

[2] Several years ago, new rules were promulgated altering the way in which the Commissioner evaluates medical opinion evidence. Because these new rules apply only to claims filed "on or after March 27, 2017," they have no impact on Barbare's case. 20 C.F.R. § 404.1520c.

20 C.F.R. § 404.1527(c)(2); *see also Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825 (2003). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Even a treating physician's opinion that does not receive controlling weight may have some persuasive content. To that end, an ALJ must consider the following factors to determine the weight to afford a treating physician's non-controlling opinion: "(1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion [with the record as a whole]; (5) whether the physician is a specialist in the area in which he is rendering an opinion; and (6) other factors that support or contradict the opinion." J.A. 31; s*ee also* 20 C.F.R. § 404.1527(c).

These factors do not create a checklist the ALJ must run through when discussing each opinion. *Tallmage v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-02035-TLW, 2015 WL 1298673, at *12 (D.S.C. Mar. 23, 2015). Rather, the ALJ's "decision should be viewed as a whole" to determine whether he gave due consideration to the various factors. *Id.*

C.

A review of the ALJ's decision shows that he correctly applied the law and carefully considered how much weight to grant each physician's opinion. His weighing determinations were each supported by substantial evidence. We now examine each impairment in turn.

COPD

Dr. Bloodworth and Dr. Chang completed questionnaires addressing Barbare's ability to work with COPD.[3] Relevant here, Dr. Bloodworth indicated that Barbare would have difficulties concentrating at work and need longer rests during the workday, while Dr. Chang indicated that Barbare would likely need frequent absences from work. Dr. Greer, on the other hand, submitted a more detailed letter where he concluded that Barbare's COPD would not prevent her from performing sedentary work. While the ALJ assigned little weight to Dr. Bloodworth and Dr. Chang's opinions, he assigned great weight to Dr. Greer's opinion. Barbare argues that the ALJ erred in his assessment of all three opinions. Specifically, she asserts that Dr. Bloodworth and Dr. Chang's opinions were entitled to controlling weight and, once credited, demonstrated that she was disabled. We disagree.

We look to Dr. Bloodworth's opinion first. Although internist Bloodworth was a treating physician, the ALJ reasonably discounted his opinion as "primarily just a recitation of the claimant's subjective complaints." J.A. 15. In fact, all of Dr. Bloodworth's responses concerning Barbare's limitations noted only "self-reported symptoms" and "subjective complaints." *See Mastro v. Apfel*, 270 F.3d 171, 177-78 (4th Cir. 2001). For example, in response to the question on whether Barbare would need to rest for significantly longer than an hour each workday, Dr. Bloodworth said, "Yes. *She states* that she cannot work more than 1 hour without resting." A.R. 1095 (emphasis added). An ALJ may discount a

---

[3] Dr. Bloodworth also based his opinion in part on Barbare's anxiety and panic attacks.

9

treating physician's opinion which is "based largely upon the claimant's self-reported symptoms," exactly as the ALJ did here. *Mastro*, 270 F.3d at 177-78.

With regard to the opinion of pulmonary specialist Dr. Chang, the ALJ sensibly discounted Dr. Chang's responses as "quite conclusory, providing very little explanation of the evidence relied on." J.A. 15. For instance, when asked whether Barbare might have difficulty concentrating at work, Dr. Chang responded, "frequent absences from work likely due to exacerbation." A.R. 568. That was it. And this was Dr. Chang's longest statement addressing Barbare's potential limitations. Although Dr. Chang briefly mentioned some medical test results later in the questionnaire, she nowhere explained how these results led to her conclusions on Barbare's limitations. Just as an ALJ was not required to credit an opinion like Dr. Bloodworth's based on subjective complaints, he was not required to credit an opinion like Dr. Chang's consisting of short, conclusory statements untethered to clinical results. *Craig*, 76 F.3d at 590; *see also* 20 C.F.R. § 404.1527(c).

Dr. Bloodworth and Dr. Chang's opinions were not just overly subjective and conclusory: they were inconsistent with the opinion of pulmonary specialist Dr. Greer. Unlike Dr. Bloodworth and Dr. Chang, Dr. Greer provided a "detailed analysis of [Barbare's] pulmonary function." J.A. 16. In addition to describing the results of Barbare's medical tests, Dr. Greer explained how those results influenced his conclusion that she could perform sedentary work. The ALJ assigned great weight to Dr. Greer's opinion after considering: the doctor's reliance on medical testing results to form his opinion, his specialization in pulmonary issues, and the length of his treatment relationship with Barbare. *See* 20 C.F.R. § 404.1527(c).

10

The ALJ's decision to assign significant weight to Dr. Greer's opinion, while discounting Dr. Chang and Dr. Bloodworth's opinions, was supported by substantial evidence. This is particularly true in light of Barbare's daily activities—like swimming and homemaking—that were "not limited to the extent one would expect" for a claimant who reported shortness of breath from COPD. J.A. 14.

Collagenous colitis

Dr. Rickoff, a gastroenterologist who treated Barbare, submitted a questionnaire addressing Barbare's work limitations due to her digestive issues—collagenous colitis that sometimes led to diarrhea. Of note here, the doctor stated that, if Barbare attempted to work a full-time schedule, she would need to take breaks totaling significantly longer than an hour each day due to diarrhea. Barbare argues that this limitation, if credited, demonstrated that she could not perform full-time sedentary work.

The ALJ assigned partial weight to the majority of Dr. Rickoff's opinion, but did not credit the portion on extra breaks, finding it "inconsistent with the record as a whole and the claimant's own testimony" on her daily living activities. J.A. 16; *see also* J.A. 9, 14. Barbare argues that the ALJ erred by failing to explain any inconsistencies between Dr. Rickoff's opinion and the record.

We see no such failure. Instead, we find substantial evidence to support the ALJ's assignment of partial weight to Dr. Rickoff's opinion. In his decision, the ALJ offered a "detailed explanation of [Barbare's] medical records relating to her digestive issues." J.A. 48. And he elaborated on the inconsistencies between Dr. Rickoff's opinion and the record as a whole. For instance, the ALJ found that Barbare had not "generally received the type

11

of medical treatment for digestive collagenous colitis one would expect for a totally disabled individual." J.A. 12. More importantly, he noted that Barbare's condition appeared to respond well to medication. It goes without saying that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Thus, the ALJ's conclusion to partially credit Dr. Rickoff's opinion was based on a correct application of the law.

Essential tremor

Dr. Revilla, a neurologist who treated Barbare once, submitted a short questionnaire opining that Barbare's essential tremor would prevent her from performing work that required typing or writing. The ALJ assigned little weight to Dr. Revilla's opinion, finding it "not consistent with his treatment notes . . . and with the record as a whole." J.A. 16. The doctor's treatment notes had described Barbare's handwriting as "shaky" but had not indicated that she would be unable to type or write in an employment setting. A.R. 1234. Barbare argues that Dr. Revilla's treatment notes were consistent with his questionnaire, and that no contrary evidence in the record justified the ALJ's failure to give the doctor's opinion controlling weight.

On the contrary, we find that the ALJ's decision to give little weight to Dr. Revilla's opinion supported by substantial evidence. Initially, as the ALJ stated, shaky handwriting on its own is "not a limitation that would preclude all writing or typing" on the job. *See* J.A. 16. What's more, although Dr. Revilla opined that Barbare's impairment began in November 2012, the doctor's own treatment notes show that Barbare was diagnosed with tremors in the mid-1990s, well before she stopped working. "Given that there is no

12

indication in the medical records to establish any significant worsening of Plaintiff's tremors after her past relevant work, it was reasonable for the ALJ to discount Dr. Revilla's opinion based on her ability to work despite the tremors." J.A. 40; *see also Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir. 1970).

The ALJ's decision highlights other evidence in the record inconsistent with Dr. Revilla's opinion. Notably, the ALJ found that Barbare activities were "not limited to the extent one would expect" given her complaints of tremors. J.A. 14. Barbare had testified before the ALJ that she had no problem writing; her signature was legible, as was her handwriting in Social Security paperwork from 2013. In that paperwork, Barbare stated that she could drive, cook, clean, and use an iPad. She even indicated that her conditions did not affect her ability to use her hands. *See* A.R. 246. All this evidence, taken together, readily supports the ALJ's decision to give little weight to Dr. Revilla's opinion.

\*\*\*

After thoughtfully considering how much weight to assign to opinions from various physicians, the ALJ examined whether Barbare's assortment of ailments, taken as a whole, prevented her from working. He concluded that Barbare retained the capacity to perform some semiskilled or skilled sedentary work, including "past relevant work as a receptionist, a supervisor, and a collections clerk." J.A. 17. Thus, he found that Barbare was not disabled under the Social Security Act.

Our task is limited to determining whether the ALJ applied the law correctly and reached conclusions supported by substantial evidence. We think that he did. We thus decline to disturb his decision or its affirmance by the district court.

AFFIRMED