Lucy JOLLY, Plaintiff,

v.

**Jo Ann BARNHART, Commissioner of Social Security, Defendant.**

**C.A. No.: 3:05–833–PMD–JRM.**

United States District Court,
D. South Carolina,
Columbia Division.

Sept. 27, 2006.

W. Daniel Mayes, Aiken, SC, for Plaintiff.

Marvin Jennings Caughman, U.S. Attorneys Office, Columbia, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This is an action brought pursuant to Title 42, Sections 405(g) and 1383(c)(3), of the United States Code, to obtain judicial review of the Commissioner of Social Security's final decision, which denied Lucy Jolly's ("Jolly" or "Plaintiff") claims for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). The record includes a Report and Recommendation ("R & R") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the Commissioner's final decision be affirmed. Plaintiff timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

## BACKGROUND

### Administrative Proceedings

On December 31, 2001, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration. She requested a hearing before an administrative law judge ("ALJ"). After a hearing on January 29, 2004, at which Plaintiff appeared and testified, that ALJ issued a decision dated May 25, 2004, denying benefits and finding Plaintiff not disabled. On January 25, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on March 17, 2005. The Magistrate Judge issued a R & R, recommending that the Commissioner's final decision be affirmed. This court now considers this recommendation and the objections filed in deciding whether the ALJ's findings of fact are supported by substantial evidence and whether proper legal standards were applied.

### Medical Evidence in the Record

Plaintiff was born on January 13, 1950. (Tr. 89.) She has a ninth grade education and past relevant work as a tanning studio attendant, cashier, and waitress. Plaintiff alleges disability since October 1, 2001, due to back problems, arthritis, and depression. (Tr. 80.)

Plaintiff has been treated for several years by various doctors at the Family Practice Center for arthritis, chronic back pain, irritable bowel syndrome and gastroesophageal reflux disease (GERD). It is well documented that Plaintiff suffers from chronic pain and degenerative disc disease, and has been prescribed pain medications. In October 2003, she was prescribed bilateral wrist splints, due to arthritis pain, and was told to avoid repetitive use of the hands for an unspecified period of time. In November 2003, E.W. Alford, M.D., one of Plaintiff's treating physicians at the Family Practice Center, completed a checklist "Psychiatric Consultation and Review Report" in which she indicated that the claimant's major depression caused impaired memory, changes in personality, visual hallucinations, emotional withdrawal, generalized anxiety, sleep disturbance, diminished energy, difficulty concentrating, and that Plaintiff had a documented current history of two or more years of inability to function outside a highly supportive living situation. Dr. Alford concluded that these mental impairments caused Plaintiff to suffer moderate restrictions of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in completing tasks in a timely manner. After completing this checklist, Dr. Alford wrote that

Plaintiff's disability was primarily "medical" and that her depression complicated her ability to work, but is not the primary cause of disability. (Tr. 322–27.)

Progress notes from the treating physician at a mental health center indicated that Plaintiff was seen occasionally between December 2001 and June 2002, for anxiety, insomnia and increased appetite. She was diagnosed with major depression and chronic pain syndrome and was prescribed Effexor and referred to counseling. Between September 2002 and September 2003, progress notes from this clinic indicate that she had mood lability and feelings of depression. She was prescribed Lexapro for her depression and anxiety. (Tr. 310–18.)

In September 2002, Plaintiff underwent examinations by J. Russell Williams, M.D. and Thomas Martin, M.D. Both doctors noted that Plaintiff was currently prescribed psychotropic medications [Effexor (anti-depressant), Trileptal (anti-seizure), Venlafaxine (anti-depressant) and Bendryl (sleep aid) ], as well as medications for her physical symptoms [Premarin (estrogen), Celebrex (arthritis pain reliever), Neurontin (pain reliever), Bentyl (IBS medication), Albuterol (asthma), Ultram (narcotic pain reliever), Nexium (acid reflux disease), and Lipitor (cholesterol medication) ]. After an examination, Dr. Williams diagnosed Plaintiff with chronic low back pain, degenerative arthritis, and some chronic obstructive pulmonary disease. He noted that her movements were "mild-to-moderately inhibited moving about the exam room due to pain" and that she had "some mild changes in her hands." He also noted, however, that there is "no evidence of nerve root or cord compression at this time," and that "strength [in her hands] is preserved, as is range of motion." (Tr. 198–200.)

Dr. Martin, who performed a mental status examination, found that she suffered from depressive disorder and pain disorder. He noted that her depression was linked to her physical disability, as "she feels closed in and helpless due to her mounting physical inabilities," and that the narcotic medications "may also contribute to depressive symptoms." Dr. Martin opined that Plaintiff's prognosis was fair, and recommended that she continue her medication and counseling and that she seek retraining so that she could return to work. (Tr. 201–04.)

**Testimony at Hearing**

At the hearing before the ALJ, Plaintiff testified that she lives with her son and his wife, who do almost everything for her. She stated that, due to the nine or ten medications she takes and their side effects, she does not drive. She claimed that her back pain and joint pain is so severe that she could not bathe or dress herself, that she needed help brushing her hair, putting toothpaste on her toothbrush, and washing her clothes. She testified that she had "problems understanding sometimes," had suicidal thoughts and hallucinations, and was very emotional and depressed. Plaintiff's son, Alan Scott Tager, testified that he had "to do pretty much everything for her" and that Plaintiff could not be around other people. (Tr. 382–96.)

William Stewart, a vocational expert ("VE"), also testified at the administrative hearing regarding the availability of jobs in the economy which could be performed by a person of Plaintiff's limitations. Given the hypothetical of one limited to performing light, unskilled labor in a low stress environment, who would need the option of sitting or standing, and would have to have limited interactions with co-workers or the public, the VE testified that there were approximately 3,000 jobs in South Carolina, and 90,000 nationally that were appropriate. The VE suggested such jobs would include bench hand work-

er, hand packer, sorter, cleaner, trimmer. "And then there would be some jobs, like inspector or examiner [of which there are] some 2,000 in South Carolina ... [and] some 30,000 nationally." When given the additional limitation of "no more than occasional grasping or gripping," the VE testified that these jobs would be eliminated. He testified that the light, unskilled jobs he had mentioned all required "using your hands on a continuous basis, certainly on a frequent basis, so [the inability to grip or grasp] would eliminate these jobs." (Tr. 396–400.)

Following this hearing, the ALJ found that Plaintiff was not disabled as meant by the Social Security Act.

## DISCUSSION

### I. MAGISTRATE JUDGE'S R & R

The Magistrate Judge recommended that the court affirm the Commissioner's decision to deny Plaintiff's claim. The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court reviews *de novo* those portions of the R & R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). "Conse-

quently, judicial review ... of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.2002). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001) (alteration in original).

### III. COMMISSIONER'S FINAL DECISION

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301–1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evi-

dence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. *See Walls*, 296 F.3d at 290.

Applying this framework, the ALJ found (1) that Jolly met the disability insured status requirements, (2) that she has not engaged in substantial gainful activity since October 1, 2001, her alleged onset date, (3) that her impairments—degenerative joint disease, chronic back pain, depression, irritable bowel syndrome and gastroesophageal reflux disease (GERD)— are severe but do not meet or equal a listed impairment, (4) that Jolly's allega-

tions regarding her limitations are not fully credible; (5) that she retains the residual functional capacity to perform "light work activity," with some limitations; (6) that she is unable to perform her past relevant work; and (7) although her limitations do not allow her to perform the full range of light work, there are a significant number of jobs in the national economy that Jolly could perform. Accordingly, the ALJ found that Jolly is not under a "disability" as defined by the Social Security Act. This decision is the final decision of the Commissioner.

## IV. ANALYSIS

The Magistrate Judge recommended that the Commissioner's final decision be affirmed. Plaintiff objects that (1) the Magistrate Judge erred in finding that the ALJ's error in defining Plaintiff as a "younger individual" when in reality she was an individual "closely approaching advanced age" was harmless error; and (2) the Magistrate Judge erred by performing an independent determination of Plaintiff's residual functional capacity and Plaintiff's credibility, when these determinations should have been performed by the ALJ. The court considers these objections in turn:

**(1) The Magistrate Judge erred in finding that the ALJ's error regarding Plaintiff's age was harmless.**

In his decision, the ALJ incorrectly stated that Plaintiff "was born on January 30, 1959, [and] is currently 45 years old." The ALJ relied upon this incorrect information in finding that Plaintiff was a "younger individual" (under age 50), as defined by 20 C.F.R. § 404.1565. This age classification is significant because the Regulations require an ALJ to base his decision regarding a claimant's ability to perform "other

work" on specific findings regarding a claimant's residual functional capacity ("RFC"), age classification, education, and previous work experience. Once the ALJ has made these individual findings, the Medical–Vocational Guidelines—numbered table rules following Appendix 1 as Appendix 2—direct the ALJ to find conclusions of "Disabled" or "Not disabled" where all of the individual findings coincide with those of a numbered rule. Because Plaintiff has significant, medically determinable non-exertional limitations that do not allow her to perform a full range of light work,[1] the table Rules did not direct a conclusion of "Disabled" or "Not Disabled" in this case. SSR 83–14 ("No table rule applies to direct a conclusion of "Disabled" or "Not disabled" where an individual has a nonexertional limitation or restriction imposed by a medically determinable impairment."). Nonetheless, though the Rules did not dictate a certain decision, the ALJ used "Medical–Vocational Rule 202.18 as a framework for decision-making." Rule 202.18 of the Guidelines specifies that a "younger individual" with limited education, skilled or semi-skilled previous work experience (skills not transferrable),[2] and with a maximum sustained work capacity limited to "light work" is not disabled. Accordingly, the ALJ found that Plaintiff was not disabled.

The ALJ erred in relying on Rule 202.18 as a framework for decision because, in reality, Plaintiff was born on January 13, 1950, and was 54 at the time of the ALJ decision. As such, Plaintiff was not a "younger person," but was a "person closely approaching advanced age (age 50–54)," as meant by the Regulations. The Magistrate Judge found that this error was harmless, as inserting Plaintiff's correct age into the grids also results in a conclusion of "Not disable" under the Medical–Vocational Rules, at Rule 202. 10.[3] Also, although the rote application of the Guidelines would have been error, the Magistrate Judge found that the ALJ appropriately used the Guidelines as a framework for his decision.[4] The Magistrate Judge further noted that the ALJ obtained testimony from a VE to determine that there were a significant number of jobs that Plaintiff could perform. Accordingly, because the ALJ only used the Guidelines as a framework and relied upon the testimony of the VE, the Magistrate Judge found that the ALJ's miscalculation of Plaintiff's age was harmless error, and recommended that the ALJ's decision be affirmed. (R & R at 12–13.)

Plaintiff objects that the Magistrate Judge's analysis is incorrect. Plaintiff asserts that there is no way the ALJ could

---

1.  The ALJ found that, due to Plaintiff's documented depression and anxiety, she could have "no more than limited interaction with co-worker, or the general public;" and she was "restricted to simple repetitive tasks in a low stress environment, that being one requiring few decisions." (Tr. 24.)

2.  The VE testified at the hearing that Plaintiff's previous work as a cashier, waitress, and tanning salon attendant could be considered "low semi-skilled at the highest level" and was basically unskilled work that "might involve some semi-skilled duties." As such, the court notes that the ALJ may have more appropriately classified Plaintiff's previous work experience as "unskilled or none."

3.  Rule 202.10 states that a claimant who is *closely approaching advanced age,* has a limited education (but is at least literate and able to communicate in English), has unskilled or no previous work experience, and is capable of light work, is not disabled.

4.  In support of his assertion that referral to and use of the grids as a "framework" in addition to VE testimony is not reversible error, the Magistrate cited three cases: *Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir.2000); *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir. 1989); and *Wilson v. Heckler,* 743 F.2d 218 (4th Cir.1984).

fairly apply the grids as a framework for decisionmaking to deny Plaintiff's claim when the ALJ did not have Plaintiff's age correct. As such, Plaintiff asks for a remand of her case for reconsideration in light of her correct age.

■ The court agrees that the Guidelines do not dictate a decision in this case. Accordingly, considering that the grids were used only as a framework for decisionmaking, the court considers whether the ALJ's mistake as to Plaintiff's age affects the validity of his decision. Where the Guidelines are not strictly applied, a claimant's age classification is still relevant to an ALJ's determination. The Code of Federal Regulations explains that a claimant's age is a vocational factor to be considered by the ALJ in determining whether the claimant is disabled:

> In determining the extent to which age affects a person's ability to adjust to other work, we consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment, as we explain in paragraphs (c) through (e) of this section. . . . When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.

20 C.F.R. § 404.1563. The Regulations specify that "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(c). However, "[i]f you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d). Further, the ALJ is not to "apply the age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(b). If a claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that she is disabled, the ALJ must consider whether to use the older age category after evaluating the overall impact of all the factors of the case. In this case, Plaintiff was 54—close to being considered of "advanced age." When one is of advanced age, the ALJ must consider that advanced age *significantly* affects a person's ability to adjust to other work. 20 C.F.R. § 404.1563(e) (emphasis added). As such, because the Regulations require that an ALJ give different consideration to a claimant's ability to adjust to other work depending on her age classification, the ALJ's error in considering Plaintiff to be a "younger person" as opposed to a "person closely approaching advanced age" clearly could have affected his determination regarding disability.

In finding that Plaintiff was not disabled, the ALJ also relied upon the VE's testimony that Plaintiff was capable of performing other jobs available in the national economy. The court therefore considers whether the VE's testimony independently provides substantial evidence in support of the ALJ's decision such that the ALJ's error as to Plaintiff's age is harmless error. In questioning a VE in a Social Security disability hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all pertinent information, including claimant's impairments, functional limitations, age, education, and work experience. *See English v. Shalala,* 10 F.3d 1080, 1085 (4th Cir.1993); *Walker v. Bowen,* 876 F.2d 1097, 1100 (4th Cir.1989). At the hearing in this case, the ALJ asked the VE to consider whether there were not a significant number of jobs in the national econo-

my that could be performed by a hypothetical claimant with Plaintiff's significant exertional and non-exertional limitations, her lack of education, and her limited previous work experience; however, the ALJ did not ask the VE to consider as a vocational factor the hypothetical claimant's classification as one closely approaching advanced age. In fact, the ALJ did not ask the VE to assume the claimant was any particular age at all. Although the Regulations do not require consideration of age as a vocational factor if the claimant is a "younger person," the court finds that failing to consider a claimant's age as a vocational factor when the claimant is "closely approaching advanced age" is error. *See* 20 C.F.R. § 404.1563(d). As such, because the VE did not explicitly consider a significant vocational factor in reaching his opinion, the court can not find that the VE's opinion constitutes substantial evidence in support of the ALJ's determination.[5] Accordingly, this matter must be remanded to the ALJ for reconsideration in light of Plaintiff's correct age.

**(2) The Magistrate Judge erred by performing independent determinations of Plaintiff's residual functional capacity and Plaintiff's credibility; these determinations should have been performed by the ALJ.**

In her initial brief, Plaintiff argued that the ALJ did not provide adequate reasons for his determinations regarding her functional capacity assessment and her credibility. Specifically, Plaintiff noted that there was medical evidence and sworn testimony in support of her claims that she could not use her hands, that her breathing was labored, and that her medications caused significant side effects. Plaintiff

argued that the ALJ erred by not weighing or considering the medical evidence of arthritis and other significant impairments in determining Plaintiff's RFC. Further, Plaintiff's claim that pain in her hands impairs her ability to grasp and grip is supported by objective medical evidence of arthritis, a condition that could reasonably be expected to produce the pain alleged. As such, Plaintiff asserted that the ALJ erred by failing to explain why he completely discounted her claims of subjective pain. In response to this argument, the Magistrate Judge did an independent evaluation of the medical evidence to show that the ALJ's findings were supported by the record. (R & R at 4–10.)

Plaintiff objects that the Magistrate Judge improperly reweighs the evidence in determining that the ALJ made a proper RFC and credibility determination. The Magistrate Judge went beyond the ALJ's stated reasons for discrediting Plaintiff's claims and cited other possible reasons allegedly supported by the record for discrediting Plaintiff's claims of subjective pain. Plaintiff argues that it is outside the scope of the Magistrate Judge's limited review to make credibility determinations or reweigh the evidence.

The court agrees with Plaintiff's analysis: both this court and the Magistrate Judge are limited to assessing whether the ALJ performed the proper analysis and whether his determinations were supported by substantial evidence. The court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro*, 270 F.3d at 176. Accordingly, the court will not consider the Magistrate Judge's independent analysis, but will only address

---

**5.** The court does not speculate as to what the VE's opinion would have been if he had considered the age of the hypothetical claimant.

The court merely finds that consideration of a claimant's age can have a significant effect on a VE's analysis and opinion.

whether the ALJ properly analyzed Plaintiff's credibility and made a RFC determination supported by the evidence.

The Fourth Circuit has clearly instructed that a claimant "need only show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged," and these complaints may not be rejected merely because the severity of pain cannot be proved by objective evidence. *Thompson v. Sullivan*, 980 F.2d 280, 282 (4th Cir. 1992) (quoting *Jenkins v. Sullivan*, 906 F.2d 107, 109 (4th Cir.1990)); *see Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir.1994) (quoting 42 U.S.C. § 423(d)(5)(A)). Nonetheless, the court notes that subjective claims of pain need not be accepted to the extent they are inconsistent with the available medical and nonmedical evidence. Such evidence includes: the use and effects of medications, the claimant's ability to perform daily activities, the consistency of the claimant's allegations, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. SSR 96–7p. Where the ALJ makes a determination regarding a claimant's credibility, the ALJ must adequately "explain the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." SSR 96–7p. If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. *Mastro v. Apfel*, 270 F.3d at 176 (holding that the court is not to "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency). The following is the ALJ's stated reasons for discrediting Plaintiff's claims of debilitating back and joint pain:

> The undersigned finds that the testimony, particularly as it related to alleged physical limitations, was inconsistent with the weight of the medical evidence, was not wholly credible and therefore failed to support a finding of disability. Specifically, the undersigned finds that the testimony regarding the claimant's virtual helplessness to perform tasks as simple as pouring tea was simply not substantiated, either on a physical or psychological basis, in the medical evidence of record. The medical record did indicate chronic depression; however, a GAF of 55 indicates a degree of limitation far less severe than that alleged. Although the claimant's arthritis manifested some early changes in the joints of the fingers and necessitated wrist splints, the medical record did not substantiate the need for the level of near-complete dependency described in the testimony.

■ In this case, because Plaintiff presented objective medical evidence of a condition that can produce significant joint pain,[6] the lack of medical evidence of the pain does not discredit Plaintiff's claims of pain. However, the ALJ properly considered the medical evidence in determining the extent to which Plaintiff's impairment could reasonably be expected to cause the pain the claimant alleges she suffers. As such, the court finds that the ALJ properly determined that Plaintiff's claims of "virtual helplessness" and "near complete dependency" were not credible, based on the objective medical evidence.

■ Although he properly discounted the severity of Plaintiff's claimed limitations, the court finds that the ALJ did not

---

6. The ALJ conceded that Plaintiff's "arthritis manifested some early changes in the joints of the fingers and necessitated wrist splints." (Tr. 22.)

adequately explain his RFC determination in regards to Plaintiff's ability to grip and grasp. The VE testified that the only jobs Plaintiff is able to perform require the ability to "us [e][her] hands on a continuous basis, certainly on a frequent basis." (Tr. 400.) As such, in finding that Plaintiff is able to perform these jobs, the ALJ must have determined that Plaintiff had the residual functional capacity to frequently grip and grasp on a daily basis.[7] However, the ALJ did not address why, despite her medically identifiable limitations regarding her hands and joints,[8] he reached this conclusion. Certainly, there is a middle ground between Plaintiff's claim that the pain in her hands makes her completely helpless—which the court agrees was properly discredited—and the ALJ's implicit determination that Plaintiff is capable of repetitive, continuous use of her hands for up to forty hours a week. The ALJ did not explain why he gave no weight to the medical evidence that Plaintiff's ability to grip and grasp is compromised by her impairments. Accordingly, the court finds that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.

Having found that the ALJ made errors of law in his decision in this case, the court may enter a judgment reversing the Commissioner's disability determination with or without remanding for further proceedings. *See* 42 U.S.C. § 405(g). In this case, the court remands the matter to the Commissioner with instructions (1) to reconsider Plaintiff's claim in light of her correct age and (2) to make a specific finding regarding how Plaintiff's impairments affect her ability to grip and grasp.

## CONCLUSION

After a careful examination of the record as a whole, the court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence. It is, therefore, **ORDERED,** for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED,** and the matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**AND IT IS SO ORDERED.**

---

7. The ALJ does not explicitly include this ability in describing Plaintiff's RFC.

8. On October 21, 2003, Plaintiff's treating physician prescribed bilateral wrist/thumb splints to be worn daily for an indefinite period to relieve the pain caused by her arthritis and tendinitis. The physician also instructed Plaintiff to avoid repetitive use of her hands. (Tr. 308.) In September 2002, Dr. Williams, a consultative physician, also noted that x-rays of Plaintiff's hands show degenerative arthritis, and that Plaintiff has "some mild changes in her hands," though he found that strength and range of motion were preserved. (Tr. 198–99.)