UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 04-1963
(CA-03-318-2)

PAMELA D. JOHNSON,

Plaintiff - Appellant,

versus

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL
SECURITY,

Defendant - Appellee.

O R D E R

The court further amends its opinion filed December 12, 2005, as follows:

On the cover sheet, section 6 -- the status line is changed to read:  "Affirmed by published opinion.  Judge Williams wrote the opinion, in which Judge Wilkinson and Judge Traxler concurred."

On page 2, opening of opinion -- "PER CURIAM" is changed to read "WILLIAMS, Circuit Judge."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 04-1963
(CA-03-318-2)

---

PAMELA D. JOHNSON,

                              Plaintiff - Appellant,

        versus

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant - Appellee.

---

O R D E R

---

Upon motion of the Commissioner of Social Security for publication of the court's opinion,

IT IS ORDERED that the motion to publish is granted.

The court amends its opinion filed December 12, 2005, as follows:

On the cover sheet, section 1 -- the status is changed from "UNPUBLISHED" to "PUBLISHED."

On the cover sheet, section 6 -- the status line is changed to read "Affirmed by published per curiam opinion."

On page 2 – the reference to the use of unpublished opinions as precedent is deleted.

For the Court - By Direction

  /s/ Patricia S. Connor  

Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PAMELA D. JOHNSON,
          *Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,
          *Defendant-Appellee.*

No. 04-1963

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge.
(CA-03-318-2)

Argued: October 26, 2005

Decided: December 12, 2005

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Williams wrote the opinion, in which Judge Wilkinson and Judge Traxler concurred.

---

## COUNSEL

**ARGUED:** Jason Eskwith Huber, FORMAN & HUBER, L.C., Charleston, West Virginia, for Appellant. Craig Ormson, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Office of the General Counsel, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Roger D. Forman, FORMAN & HUBER, L.C., Charleston, West Virginia, for Appellant. Donna L. Calvert, Regional Chief Counsel, Region III, SOCIAL SECURITY ADMINISTRA-

TION, Office of the General Counsel, Philadelphia, Pennsylvania; Kasey Warner, United States Attorney, Kelly R. Curry, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

**OPINION**

WILLIAMS, Circuit Judge:

Pamela Johnson challenges the district court's decision affirming the Commissioner of the Social Security Administration's denial of her disability insurance benefits (DIB) claim. Johnson's alleged disabilities include chronic pain, depression, and impairments in her hands. After a hearing, the administrative law judge (ALJ) determined that Johnson was not disabled. Johnson appealed the ALJ's decision to the Appeals Council, which denied her petition for review. Johnson then initiated this suit in federal court, seeking review of the administrative decision. After considering cross-motions for summary judgment, the magistrate judge recommended granting the Commissioner's motion for summary judgment and denying Johnson's motion for summary judgment. The district court adopted the magistrate judge's report and recommendation and Johnson now appeals. For the following reasons, we affirm.

I.

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g). . . ." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard.'" *Id.* (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig*, 76 F.3d at 589 (internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Id.* "Where conflicting evi-

dence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). With this framework in mind, we turn to Johnson's argument that the record lacks substantial evidence to support the ALJ's finding that she is not disabled. *See Craig*, 76 F.3d at 589 (noting that the decision before the court is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence).

## II.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A)(West Supp. 2005). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry."[1] *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The ALJ decided Johnson's case at the fifth step, which requires the Commissioner to prove that the claimant, despite her impairments, can perform a "significant number of jobs in the national economy." *Id.* Although the ALJ found that Johnson's impairments were "severe" as described in 20 C.F.R. § 404.1520(b) and that she could not perform her past relevant work, the ALJ concluded that she had the residual functional capacity to perform "a significant range of light work."[2] (Supp. J.A. 23-24.) Specifically, while

---

[1]The five step inquiry asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work. 20 C.F.R. § 404.1520 (2005). The parties agree that Johnson has satisfied steps one through four.

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b)(2005).

finding that Johnson's impairments cause her chronic mild to moderate pain, slightly restrict her fine and gross manipulation, slightly limit her ability to handle stress, and moderately limit her ability to maintain concentration, the ALJ also determined that Johnson can be attentive and carry out assigned work instructions and can "occasionally perform postural activities such as climbing." (Supp. J.A. 24.) The ALJ also found that the objective medical evidence did not support Johnson's subjective complaints of pain.[3] Acknowledging these limitations, the ALJ accepted the vocational expert's testimony that suitable "light work" as a cashier, office clerk, or small products assembler existed for Johnson.[4]

As grounds for reversal, Johnson contends that the record does not support the ALJ's decision because: (1) the ALJ did not afford proper weight to the observations of Dr. Cavender, Johnson's primary treating physician; (2) the ALJ improperly accorded too much weight to the opinion of Dr. Starr, the independent medical expert; (3) the ALJ improperly rejected the psychological evaluation of John Atkinson; (4) the ALJ incorrectly determined that Johnson's testimony was not credible; and (5) the ALJ posed inaccurate hypothetical questions to Lisa Goudy, the vocational expert. We address these arguments in turn.

A.

We begin by reviewing the ALJ's consideration of the opinion of Dr. Cavender, Johnson's principal treating physician. Dr. Cavender completed a general physical exam of Johnson and submitted her treatment notes, both of which conflicted with a "Physical Capacities Questionnaire and Assessment" later completed by Dr. Cavender.

---

[3]"Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1529(c)(2)(2005).

[4]We note that this is Johnson's second attempt at obtaining DIB. She initially sought DIB in 1995, at age 38, but her application was denied because the ALJ concluded that she had the capacity to perform light work. She filed this claim in 2000 claiming that her condition had deteriorated.

Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.[5] *Mastro*, 270 F.3d at 178.

After a general physical examination of Johnson on September 1, 2000, Dr. Cavender diagnosed her with a lumbar strain, chronic pain, degenerative disc disease, and a right shoulder strain. Dr. Cavender also stated that Johnson could perform light work, including lifting ten pounds regularly, that Johnson should avoid excessive lifting and bending, and that Johnson would be a good candidate for vocational rehabilitation. Dr. Cavender's treatment notes reveal that to alleviate Johnson's pain she prescribed Oxycontin and that she also prescribed her Zoloft. The treatment notes, however, do not indicate why Dr. Cavender prescribed Zoloft, and Johnson never complained to any other physician that she suffered from depression.[6] The treatment notes also indicate that Dr. Cavender diagnosed Johnson with sciatica and possible fibromyalgia.[7] Dr. Cavender's 2000-2001 evaluation thus supports the ALJ's conclusion that Johnson suffers from chronic mild to moderate pain but maintains the ability to perform light work.

Six days after Johnson's hearing before the ALJ, on March 26,

---

[5]The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, "the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178.

[6]Zoloft is a prescription drug used to treat depression, social anxiety disorder, posttraumatic stress disorder, panic disorder, obsessive compulsive disorder and premenstrual dysphoric disorder. *See* Zoloft Home Page, http://www.zoloft.com (last visited Nov. 14, 2005).

[7]Dr. Saldanha, a specialist in chronic pain management, also treated Johnson for pain, but he detected no evidence of sciatica. (Supp. J.A. 252.) Dr. Saldanha also specifically stated that he would not recommend narcotics for Johnson.

2002, Johnson submitted a "Physical Capacities Questionnaire and Assessment" completed by Dr. Cavender. (Supp. J.A. 432.) The ALJ accepted this assessment into evidence, but later discredited it after finding it unreliable because it was not supported by clinical evidence and because it inexplicably conflicted with Dr. Cavender's 2000-2001 evaluation and other medical opinions. *See Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because the record contained persuasive contradictory evidence and the treating physician's own notes contradicted his opinion). We need not determine whether substantial evidence supports the ALJ's rejection of the assessment because the March 2002 assessment is not relevant to our inquiry.[8] To qualify for DIB, Johnson must prove that she became disabled prior to the expiration of her insured status. 42 U.S.C.A. § 423 (a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a)(2005); *see also Henley v. Comm'r of Soc. Sec.*, 58 F.3d 210, 213 (6th Cir. 1995)(upholding denial of disability insurance ben-

---

[8]Even if we were to consider Dr. Cavender's March 2002 assessment, substantial evidence supports the ALJ's finding that it is unreliable because it inexplicably conflicts with other medical evidence. For instance, the assessment concluded that Johnson could not sit, stand, or walk for extended periods of time, could not grip objects for long periods of time, could not grasp objects or push or pull objects, and could not concentrate or pay attention for a sustained period, and that she could "not at all" bend, squat, crawl, climb, or reach. Notably, Dr. Cavender did not change her initial diagnosis of sciatic radiculopathy, but merely stated in the 2002 assessment that pain, weakness, and swelling prevented Johnson from performing such activities. Without an intervening change in diagnosis, the assessment is in direct conflict with Dr. Cavender's September 2000 and July 2001 statements that Johnson could perform light work and would be a good candidate for vocational rehabilitation. Dr. Cavender's medical notes prior to 2002 are also inconsistent with the assessment's conclusion that Johnson could not grasp objects because, prior to 2002, Dr. Cavender's notes never mentioned any hand impairments, such as carpal tunnel syndrome. In addition, Johnson's testimony that on a regular basis she attends church, reads books, watches television, feeds the family pets, cleans the house, washes clothes, manages her household finances, visits relatives, and performs the stretches recommended by her chiropractor is inconsistent with the assessment because many of these activities require reaching, grasping, pushing, pulling, and concentration.

efits where claimant failed to prove disability prior to loss of insured status); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1458 (9th Cir. 1995)(holding that "individuals who apply for benefits under the Act after the expiration of their insured status, for a disability that prevents substantial gainful activity at the time of the application, must show that the current disability has existed continuously since some time on or before the date that their insured status lapsed"); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991)(upholding denial of DIB where claimant alleged onset of disability three years after the date last insured). The March 26, 2002 assessment was submitted almost nine months after Johnson's last insured date of June 30, 2001. Johnson has made no argument that the disabilities contained in the assessment existed continuously from June 30, 2001 to the present, and there is no objective medical evidence that the impairments observed by Dr. Cavender in 2002 existed prior to June 30, 2001. Therefore, we find no merit to Johnson's argument that the ALJ failed to give proper weight to Dr. Cavender's 2002 assessments.

## B.

Johnson next contends that the ALJ's denial of disability benefits is not supported by substantial evidence because the ALJ improperly accorded too much weight to the independent medical examiner. Dr. Starr, a board certified internist, reviewed Johnson's entire medical history and diagnosed her with chronic pain syndrome, but he concluded that she had the residual functional capacity for light work with a sit-stand option. Dr. Starr also stated that he would recommend that Johnson not repeatedly climb stairs. Dr. Starr testified that he doubted that fibromyalgia caused Johnson's alleged pain and found no evidence of carpal tunnel syndrome.[9] Dr. Starr also testified that Johnson's pain medication should not cause her alleged "doped up" effect because such side effects should have subsided after continued use of the medication.

---

[9]Johnson also contends that the ALJ's decision warrants reversal because the ALJ improperly restricted Johnson's cross-examination of Dr. Starr by not allowing Johnson to inquire into Dr. Starr's philosophical views on fibromyalgia. This claim is without merit because the ALJ determined Dr. Starr to be an independent witness and explicitly stated that Johnson could question "the elements of [Dr. Starr's] diagnosis," but not his personal views. (Supp. J.A. 82.)

Substantial evidence supports the ALJ's reliance on Dr. Starr's opinion. First, Dr. Starr's opinion that Johnson suffers from chronic pain, but maintains the residual functional capacity for light work, is consistent with Dr. Cavender's 2000-2001 evaluation. As noted above, Dr. Cavender thought Johnson would be a good candidate for vocational rehabilitation. Second, Dr. Starr's opinion is consistent with the opinion of Dr. Saldanha, a chronic pain specialist who treated Johnson, and, in 1999, found insufficient evidence to "warrant re-opening" Johnson's claim for temporary total disability. (Supp. J.A. 252-53.) Third, Dr. Starr's opinion is consistent with the opinions of Dr. Loimil, Johnson's treating orthopedic surgeon, that Johnson should continue with "conservative treatment" for her back, that no prescriptions were needed, and that she could engage in activities as tolerated. (Supp. J.A. 404.) Fourth, Dr. Starr's opinion is consistent with the medical tests performed on Johnson: an MRI revealed Johnson had a normal spinal series; lumbar x-rays showed that Johnson suffered from a lumbar strain and degenerative disc disease; and an EMG and nerve conduction study performed on Johnson's legs showed normal functioning and no evidence of radiculopathy.[10] No nerve conduction study, EMG, or other medical test suggested that Johnson suffered from carpal tunnel syndrome or other hand maladies. Although Dr. Starr is not a treating physician, the ALJ properly awarded his opinion significant weight because Dr. Starr thoroughly reviewed Johnson's medical records, the objective medical evidence supports Dr. Starr's conclusion, and his opinion is consistent with the other medical opinions.

## C.

Johnson also contests the ALJ's rejection of the psychological evaluation performed by John Atkinson, a clinical psychologist. Johnson sought a mental profile from Atkinson at the request of her attorney. Atkinson concluded that Johnson's "psychological impairments, using AMA criteria, would be at about 10 percent" and diagnosed her with adjustment disorder with depressed mood of moderate to severe and anxiety disorder. Atkinson administered a clinical interview, a Wechsler Adult Intelligence Scale test (WAIS), a Wide Range

---

[10]Radiculopathy is a "disorder of the spinal nerve roots." *Stedman's Medical Dictionary* 1503 (27th ed. 2000).

Achievement Test, and a Minnesota Multiphasic Personality Inventory (MMPI-2). The MMPI-2 and the WAIS test produced invalid results. The MMPI-2 produced an invalid score because the results indicated that Johnson was either "faking bad" on the exam or had an IQ below that required by the test. (Supp. J.A. 382.) Atkinson questioned the validity of the WAIS test because of various internal and external factors and because Johnson's tests showed an unexplained steady decline in IQ. In addition, the clinical interview consisted of little more than a recitation of Johnson's subjective complaints of pain. Atkinson's opinion is also inconsistent with the fact that Johnson never sought help from a specialist for her depression, never discussed her depression with any doctor other than Dr. Cavender, and could not describe any limitations she has as a result of her alleged depression. Because Atkinson acknowledged the significant errors in his tests and because the record contains little evidence of Johnson's alleged depression, substantial evidence supports the ALJ's rejection of Atkinson's opinion.

## D.

Johnson next contests the ALJ's finding that Johnson's subjective complaints of pain were not entirely credible. "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591; *see also* 20 C.F.R. § 404.1529 (2005). As we established above, the objective medical evidence demonstrates that prior to the expiration of her insured status Johnson at most suffered from a lumbar strain, degenerative disc disease, a slight mental impairment, and a slight hand impairment.

At the hearing, Johnson testified that she suffers from constant pain throughout her body and suffers severe hand impairments. Johnson's testimony as to her severe hand problems, including her propensity to drop objects, her inability to write more than three sentences at a time, and the numbness in her hands, is not supported by any objective medical evidence. It is surprising that in light of such symptoms, Johnson failed to seek help from a specialist or have an EMG, x-ray, MRI, or nerve conduction study performed on her hands. Johnson directs our attention to Dr. Cavender's March 26, 2002 assessment as

medical evidence of her hand impairments. Even if we were to review the assessment, it does not substantiate Johnson's hand impairment claim because there is no evidence that Dr. Cavender performed any physical tests on Johnson's hands and the assessment of Johnson's hand impairment therefore rests solely on Johnson's subjective statements of pain. Without objective medical evidence of a medically determinable impairment that could cause the symptoms Johnson suffers in her hands, the ALJ properly concluded that Johnson is not limited by a severe hand impairment.

The ALJ also found Johnson's complaints of pain to be inconsistent with her testimony of her routine activities. Johnson testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor. Johnson also testified that she can lift approximately ten pounds. The ALJ logically reasoned that the ability to engage in such activities is inconsistent with Johnson's statements of excruciating pain and her inability to perform such regular movements like bending, sitting, walking, grasping, or maintaining attention. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)(upholding a finding of no disability where claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town every day). These activities are also inconsistent with the allegedly disabling "doped up" effect Johnson suffers from her medications. *See Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations.").

The ALJ further found Johnson's subjective complaints of pain were not credible because Johnson's answers to questions posed by her attorney appeared coached, but she gave only evasive and unclear answers to questions the ALJ posed to her at the hearing. For one example, Johnson testified that Zoloft lessens her depression, but, in response to the ALJ's questioning, she could not testify to any limitations she has as a result of her alleged depression. For another example, Johnson's attorney asked her "how much pain are you in on a general daily basis?" to which Johnson responded, "about 7 to 9" despite the fact her attorney did not provide a scale to evaluate her

pain. (Supp. J.A. 51.) In contrast, the ALJ asked Johnson what type of work she performed from 1975 to 1985 and Johnson responded, "it was like, you know, just work with the neighbor, and it was like — you know, just — I don't know how you'd describe it." (Supp. J.A. 56.) Although we cannot make credibility determinations, we are empowered to review the ALJ's decisions for substantial evidence, and we find that substantial evidence supports the ALJ's credibility assessment. *See Craig*, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on . . . the ALJ.") (internal quotation marks omitted).

## E.

Finally, Johnson argues that the hypothetical questions posed to Lisa Goudy, the vocational expert, did not accurately reflect her condition because the ALJ neglected to include the alleged severe limitations created by her depression, her drowsiness, and her gross and fine manipulation impairments. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The ALJ asked Goudy whether an individual, like Johnson, with a high school education, Johnson's past relevant work experience, a residual functional capacity for light work, who requires a sit-stand option, has a moderate inability to climb, has a marked inability to work at heights or around dangerous machinery, has a slight mental impairment, and a slight impairment in fine and gross manipulation could find suitable employment. Goudy responded that jobs such as a routine office clerk, a cashier, or a small products assembler existed in the economy for such an individual. Having concluded that substantial evidence supports the ALJ's decision that Johnson suffers from no more than a slight emotional impairment, a slight impairment in gross and fine manipulation, and that any alleged drowsiness is not disabling, the hypothetical questions posed to the vocational expert adequately reflected Johnson's characteristics at the date she was last insured.

## III.

We find that substantial evidence supports the ALJ's conclusion that Johnson is not disabled within the meaning of the Social Security

Act. Accordingly, we affirm the district court's grant of summary judgment in favor of the Commissioner on the denial of disability benefits.

*AFFIRMED*