**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1362

WAYNE HAILEY,

                    Plaintiff - Appellant,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant - Appellee.

Appeal from the United States District Court for the Western
District of Virginia, at Danville.   Jackson L. Kiser, Senior
District Judge.  (4:06-cv-00039-jlk)

Argued:  May 15, 2008                Decided:  July 17, 2008

Before NIEMEYER and DUNCAN, Circuit Judges, and Claude M. HILTON,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Joel Cawthon Cunningham, Jr., Halifax, Virginia, for
Appellant.   Roxanne Andrews, SOCIAL SECURITY ADMINISTRATION,
Philadelphia, Pennsylvania, for Appellee.  **ON BRIEF:** Michael
McGaughran, Regional Chief Counsel, Region III, William B. Reeser,
Supervisory Attorney, Office of the General Counsel, SOCIAL
SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; John L.
Brownlee, United States Attorney, Sara Bugbee Winn, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2003, Wayne E. Hailey filed for Social Security disability benefits. After two hearings before an administrative law judge (ALJ), the Social Security Commission adopted a final decision denying Hailey's request for disability benefits. Hailey filed suit in United States District Court for the Western District of Virginia. Both parties filed motions for summary judgment and Judge Jackson L. Kiser referred the matter to the magistrate judge for a report and recommendation. The magistrate judge recommended that Hailey's motion be granted, holding that the Commission's decision to deny benefits was not supported by substantial evidence. The district court rejected the magistrate judge's recommendation and entered summary judgment in favor of the Commissioner, affirming the Commission's final decision. We affirm the district court's ruling.

I.

Hailey's childhood was a difficult one. He witnessed the rape and murder of his mother and was sexually abused by a foster father. He enlisted in the Navy in 1972, but left shortly thereafter because he was unable to adjust to the lifestyle. He spent a large portion of the years between 1981 and 2000 in prison for armed robbery and second degree murder. While not in prison, Hailey worked as a tobacco farmer. In July, 2003, Hailey quit

3

working and shortly thereafter applied for Social Security disability benefits.

In his initial application for disability benefits, Hailey cited myriad physical ailments, such as high blood pressure, arthritis, the inability to stay in heat, a slipped back disc, and a "busted leg" as reasons why he was unable to work. After a hearing, the ALJ determined that Hailey's physical ailments did not render him disabled because he was able to perform light work. Hailey appealed this decision to the Commission's Appeals Council, who remanded the case for the ALJ to consider evidence of mental impairment.

At the time of the second hearing, Hailey was 50 years old and had approximately a ninth grade education. He was a part-owner of his residence and rented out a portion of his space for storage use. He lived without electricity and subsisted on public assistance and food stamps. He lived with approximately 40 cats that he cared for by donation.

Hailey spends much of his time at a convenience store located about six miles from his residence. At the store, Hailey converses with the store's owners, who help him read his mail. Hailey performs custodial duties around the store in exchange for food from the owners.

On remand, the ALJ considered two psychologists' reports. Dr. Samuel Fletcher examined Hailey on May 26, 2005, at the request of

4

Hailey's attorney. After administering an IQ test, Dr. Fletcher found Hailey to have a verbal IQ of 71, a performance IQ of 70, and a full-scale IQ of 68. Dr. Fletcher found that while Hailey would be able to attend work regularly, he could not perform detailed or complex tasks and would find simple and repetitive tasks challenging. He diagnosed Hailey with a cognitive disorder that approached mild mental retardation and stated that Hailey suffered from depression, alcohol and nicotine dependence, and an anti-social personality disorder. He concluded that "[t]he stresses encountered in competitive work frequently will result in confusing" Hailey.

Dr. Karen Russell examined Hailey on January 12, 2006. After administering an IQ test, Dr. Russell found Hailey to have a verbal IQ of 85, a performance IQ of 75, and a full-scale IQ of 78. She found that Hailey had an anxiety disorder, a history of alcohol abuse, and an anti-social personality disorder. Ultimately, Dr. Russell concluded that Hailey could work regularly.

II.

The Social Security Act provides that findings of the Commissioner are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g); see Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

5

conclusion")(internal citations and quotation marks omitted). In reviewing whether substantial evidence supports the findings of the Commissioner, "we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of [the Commissioner]." Johnson v. Barnhart, 434 F.3d 650, 653 (2005)(internal citations and quotation marks omitted); see also Craig, 76 F.3d at 589("Where conflicting evidence allows reasonable minds to differ as to whether a claimant . . . is disabled, the responsibility for that decision falls on [the Commissioner]").

The Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). To determine whether a claimant is eligible for disability benefits, the Social Security Administration established a five-step process. See 20 C.F.R. § 416.920; see also Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). After finding that Hailey satisfied the requirements of the first four steps,[*] the ALJ

_____

[*]The first step requires the Commission to determine whether the claimant is currently working. The second step requires the Commission to consider whether the claimant has a severe mental or physical impairment. The third step requires the Commission to determine whether the claimants impairment is medically severe. The fourth step requires the Commission to consider whether the claimant has the residual functional capacity to engage in his

6

denied Hailey's claim for benefits at the fifth step. The fifth step requires that the Commissioner prove that Hailey had the functional capacity to do any job that exists in significant numbers in the national economy. 20 C.F.R. § 416.960 (c)(2). The ALJ found that while Hailey's impairments were severe and he did not have the capacity to engage in his past work as a tobacco farmer, he did have the functional capacity to perform light custodial work.

In recommending that Hailey be granted summary judgment, the magistrate judge concluded that the ALJ committed error by discounting the opinions of Dr. Fletcher and Dr. Russell. A relevant passage from Dr. Fletcher's report states that:

> Hailey would not be able to perform detailed and complex tasks, and in fact often would be challenged by simple and repetitive tasks. He might be able to maintain regular attendance in the workplace or perform work activities on a consistent basis, but he clearly would need special or additional supervision. His normal workday or workweek would not be interrupted by such things as auditory hallucinations or paranoia. He also would likely be able to accept instruction from supervisors, but again requiring considerable help. While he might be able to interact with some coworkers, he should not be expected to be able to interact adequately with the public. The stresses encountered in competitive work frequently will result in confusing him.

A relevant passage from Dr. Russell's report states that:

> [Hailey] is not likely able to tolerate the usual stressors encountered in competitive work. If work was not interpersonally based and he was left alone to perform simple repetitive tasks, he would quite possibly

past relevant work. See 20 C.F.R. § 416.920 (a)(4).

7

perform independently without too much difficulty; however, if there were interruptions in the work and he was asked to be doing additional activities, he would likely have increasing episodes of anxiety that would then lead to him becoming possibly violent and/or walk off the job.

At the second hearing, the ALJ heard opinion testimony from a vocational expert (VE) about whether there were jobs available for a person who had the limitations identified in Dr. Fletcher's and Dr. Russell's reports. The VE testified a person with the limitations described in Dr. Russell's report could perform light custodial work, but that a person with the limitations described in Dr. Fletcher's report could not. When asked by Hailey's counsel, quoting from Dr. Russell's report, whether there were jobs available for a person who "is not likely able to tolerate the usual stressors encountered in competitive work," the VE replied that there were not. The magistrate judge reasoned that the VE's answer to this second question meant that Hailey's mental condition as described by both Dr. Fletcher and Dr. Russell meant that Hailey could not find gainful employment and was therefore disabled under the Act.

We agree with the district court that the Commissioner's view better comports with the two doctors' findings when each report is examined in total. In addition to the paragraph quoted above, Dr. Russell's report stated that Hailey is "likely to be able to perform work activities on a consistent basis," "is likely able to maintain regular attendance in a workplace," "would likely benefit

8

from work duties that are simple and repetitive and of a rote-task nature," and had only a moderate limitation in his ability to "respond appropriately to work pressures in a usual work setting." Moreover, while Dr. Fletcher's report is more skeptical of Hailey's ability to function in a competitive work environment, he does observe that Hailey "might be able to maintain regular attendance in the workplace or perform work activities on a consistent basis, but he clearly would need special or additional supervision."

When weighing the two doctors' opinions, the ALJ deemed Dr. Russell's report to be more credible. In her report, Dr. Russell noted that Hailey had suffered a foot injury prior to his examination by Dr. Fletcher and that this injury likely contributed to Hailey's lower IQ scores on Dr. Fletcher's test. Furthermore, Hailey's IQ as measured by Dr. Fletcher was below the level typically accepted by the Navy for enlistment purposes, thus suggesting that Hailey might have been distracted during Dr. Fletcher's examination. As the ALJ has the responsibility to weigh conflicting evidence and determine witness credibility, Johnson, 434 F.3d at 653, we find that the ALJ's decision to give Dr. Russell's report more weight than Dr. Fletcher's is supported by substantial evidence.

The Fourth Circuit has stated that "for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in

response to proper hypothetical questions which fairly set out all of claimant's impairments." <u>Walker v. Brown</u>, 889 F.2d 47, 50 (4th Cir. 1989). When the VE was asked whether an individual with all the characteristics described in Dr. Russell's report could find work, the VE concluded that such an individual could find gainful employment doing light janitorial work. It was only when the VE was asked to analyze one paragraph from Dr. Russell's report in isolation that he opined that such an individual would be unable to function in a work environment. Thus, the ALJ and the Commission were faced with a situation where one doctor's findings led to the conclusion that Hailey was disabled and another doctor's findings led to the conclusion that he was not. The ALJ identified the reasons why he deemed Dr. Russell's report more credible than Dr. Fletcher's and we believe that finding is supported by substantial evidence. Consequently, we find that the Commissioner's decision to deny benefits under the Social Security Act is supported by substantial evidence.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

10