<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-1351

KENNETH P. MYERS,

             Plaintiff – Appellant,

      v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

             Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Elkins.   John Preston Bailey, Chief District Judge.  (2:10-cv-00069-JPB-JES)

Submitted:  October 27, 2011          Decided:  November 16, 2011

Before MOTZ, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Travis M. Miller, BAILEY, STULTZ, OLDAKER & GREENE, P.L.L.C., Weston, West Virginia, for Appellant.  Eric P. Kressman, Regional Chief Counsel, Victor J. Pane, Supervisory Counsel, Philadelphia, Pennsylvania; William J. Ihlenfeld, II, United States Attorney, Katie M. Gaughan, Special Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kenneth P. Myers appeals the district court's order affirming the Commissioner of Social Security's denial of his application for disability insurance benefits and supplemental security income. We must uphold the decision to deny benefits if the decision is supported by substantial evidence and the correct law was applied. 42 U.S.C. § 405(g) (2006); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653 (internal quotation marks omitted). This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the Commissioner's decision. Id.

Myers "bears the burden of proving that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) (2006)). The Commissioner uses a five-step process to evaluate a disability claim, asking, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to

his past relevant work; and (5) if not, whether he could perform any other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Myers contends that the Administrative Law Judge ("ALJ") erroneously found that his sleep apnea had been and could be successfully treated. He argues the ALJ's finding is contradicted by objective medical evidence and that the ALJ failed to adequately discuss contradictory evidence. Myers asserts that the ALJ's decision rests on a finding that he did not follow prescribed treatment without conducting the requisite legal analysis to support such a finding.

Substantial evidence supports the ALJ's conclusion that Myers "failed to establish a basis for his complaints of periods of sleep during the day." (A.R. 19).[1] As the ALJ observed, Myers' medical history contains only intermittent complaints of respiratory problems and daytime drowsiness.

---

[1] "A.R." refers to the administrative record filed as part of the record on appeal.

Dr. Palade opined that use of a BiPAP machine would control Myers' symptoms, and Myers did report feeling better. There are no records he returned to either Dr. Palade or Dr. Pearson complaining of daytime drowsiness. Although Myers qualified for nighttime oxygen in November, there is no record he was evaluated thereafter. Myers' hearing testimony was the only evidence that he continued suffering from daytime drowsiness despite the BiPAP and the addition of oxygen. The ALJ considered Myers' statements concerning daytime drowsiness but concluded they were not credible in light of Dr. Palade's assessment, the short period of time in which Myers had been using the BiPAP with oxygen, and Myers' testimony that he had not kept the machine in place overnight. Myers bears the burden of proving that he is disabled, English, 10 F.3d at 1082, and under the circumstances, we hold that the ALJ's conclusion that Myers failed to meet that burden is supported by substantial evidence.

Further, the ALJ considered Myers' failure to use the BiPAP machine correctly in order to determine the credibility of Myers' complaints of continued daytime drowsiness. As discussed above, Myers' testimony was the only evidence his daytime

4

drowsiness persisted despite use of the BiPAP.[2] Myers argues that the ALJ found that he failed to follow prescribed medical advice but failed to follow the procedures set forth in Social Security Ruling ("SSR") 82-59, 1982 WL 31384. However, SSR 82-59 only applies to "[a]n individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source." Id. at *1. Here, the ALJ did not conclude that Myers was disabled but had failed to follow prescribed treatment, and therefore was not entitled to benefits. Instead, the ALJ determined that Myers had not met his burden in establishing disability because the primary evidence that Myers suffered daytime drowsiness despite use of a BiPAP machine was his own testimony, which the ALJ determined was not credible in light of evidence that he was not using the machine correctly.[3] See Owen v. Astrue, 551 F.3d 792, 800 n.3 (8th Cir. 2008) (noting that SSR 82-59 does not

---

[2] Although Dr. Pearson's letter indicates that Myers' daytime drowsiness persisted despite the BiPAP, there are no records of Myers presenting to Dr. Pearson complaining of daytime drowsiness subsequent to Myers reporting feeling good after using a CPAP machine.

[3] Myers' contention that the ALJ reached this conclusion by relying on her own opinion is without merit. Myers points to the ALJ's statement that Myers' smoking affected his ability to oxygenate his body. However, as we have explained, the ALJ found Myers was not disabled because Myers had failed to meet his burden in establishing a disability, not because he failed to follow prescribed treatment.

apply where noncompliance is used for purposes of determining weight of evidence).

Myers argues the pulse oximetry testing contradicts the ALJ's conclusion because it shows that Myers' condition did not improve even when a BiPAP machine was used in a controlled testing environment. We disagree. There is no record of nighttime pulse oximetry studies without the use of a BiPAP machine with which to compare the nighttime BiPAP study. Myers' own report of improvement after the August CPAP study indicates the machine did make a difference. Additionally, there are no medical records evaluating Myers' progress on BiPAP with oxygen.

Myers asserts that the ALJ erroneously stated that Myers "has only been using the BiPAP for a short period of time and he has failed to document any evaluation of his alleged problems using the machine." (A.R. 19). He argues this statement is contradicted by the November 8 nocturnal BiPAP test. However, the ALJ's statement concerns Myers' testimony that he could not keep the BiPAP machine in place overnight at home, not that he was never evaluated while using a BiPAP machine.

Myers contends that the ALJ failed to consider pulmonary function testing results indicating Myers suffered from chronic obstructive pulmonary disease. Myers notes that the ALJ disregarded the results because Section 3.00E of

6

Appendix 1 dictated that the results cannot be considered, but Myers asserts that the Listings do not apply to consideration of medical evidence beyond step three.

The test results indicated Myers' lung age was 124, but the session quality was graded F. Section 3.02(A) of the Listings sets forth the criteria a claimant must meet in order to be found disabled at step three. Section 3.00E outlines the indicia of reliability that must be present in order for the results of a test to be considered. The record makes it clear that Myers' test results were not reliable. Myers cites no support for the proposition that the ALJ was required to disregard the guidance of Section 3.00E at steps four and five.

We conclude that substantial evidence supports the agency decision, and we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED