**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-2226

SYLVIA JACKSON,

             Plaintiff - Appellant,

      v.

MICHAEL J. ASTRUE, at Office of Disability Adjudication
(Administrative Law Judges),

             Defendant - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Robert J. Conrad,
Jr., Chief District Judge.  (3:09-cv-00193-RJC-DCK)

Argued:  December 6, 2011          Decided:  February 23, 2012

Before MOTZ, GREGORY, and KEENAN, Circuit Judges.

Remanded by unpublished opinion.  Judge Gregory wrote the
opinion, in which Judge Motz and Judge Keenan joined.

**ARGUED**: Hannah Rogers Metcalfe, HANNAH ROGERS METCALFE, PA,
Greenville, South Carolina, for Appellant.  Lisa G. Smoller,
SOCIAL SECURITY ADMINISTRATION, Boston, Massachusetts, for
Appellee.  **ON BRIEF**: Anne M. Tompkins, United States Attorney,
Jennifer A. Youngs, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

In 2004, Sylvia Jackson filed an application for supplemental security income ("SSI"). Jackson suffers from a number of mental and physical impairments, including major depression disorder and diminished intellectual functioning. After her claim was denied by the commissioner of the Social Security Administration, Jackson requested a hearing before the Administrative Law Court. The administrative law judge ("ALJ") denied her claim, and the Appeals Council likewise denied her request for review. Having exhausted her administrative remedies, Jackson filed a civil action pursuant to 42 U.S.C. § 405(g). The district court adopted the magistrate judge's recommendation to affirm the commissioner's denial of Jackson's application for SSI. Jackson now appeals the district court's order affirming the commissioner's final decision. For the reasons that follow, we find that Jackson is entitled to a sentence six remand. See 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence be taken before the Secretary . . . upon a showing that there is new evidence which is material. . . .").


                               I.

Judicial review of the commissioner's decision is governed by 42 U.S.C. § 405(g). Johnson v. Barnhart, 434 F.3d 650, 653

(4th Cir. 2005) (per curiam). When reviewing a denial of benefits, this Court must accept the commissioner's findings of fact if they are supported by substantial evidence and if they were reached by applying the correct legal standard. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." Johnson, 434 F.3d at 653. As we have explained, substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court defers to the commissioner's decision. Johnson, 434 F.3d at 653.

## II.

The commissioner uses a five-step process to evaluate disability claims. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the commissioner asks, in sequence, whether the applicant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) is capable of performing her past relevant work; and (5) is capable of adjusting to other work that is available

3

in significant numbers in the national economy. See 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof in steps 1-4. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). At step 5, however, the burden shifts to the commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." Id. If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At steps 1 and 2, the ALJ found that Jackson had not engaged in substantial gainful activity since the date of her application for SSI and that she suffered from severe impairments, including depression and diminished intellectual functioning. At step 3, the ALJ found that Jackson did not have an impairment that met or equaled one of the listed impairments found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Finally, at steps 4 and 5, the ALJ found that Jackson could return to her past work as a housekeeper and that other jobs existed in the national economy that she could perform. Based on these findings, the ALJ denied her application for SSI, concluding that she was not disabled within the meaning of the Social Security Act.

The only issue on appeal is whether the ALJ properly evaluated Jackson's case at the third step, which requires the ALJ to identify the relevant listed impairments and compare the listing criteria with the evidence of the plaintiff's symptoms. As grounds for reversal, Jackson argues that the ALJ erred by concluding that her level of cognitive functioning did not meet or equal the listed impairment for mental retardation, detailed in Listing 12.05.  Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05.  Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A-D.  At issue in this case was Requirement C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70," as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The ALJ found that Jackson did not establish any of the impairments listed in Appendix 1, including Listing 12.05C. Jackson argues that the ALJ erred with regard to this finding by (1) discrediting Jackson's IQ scores without sufficient explanation, (2) ignoring substantial evidence indicating that Jackson currently exhibits deficits in adaptive functioning and

5

exhibited these deficits during her development period, and (3) improperly relying on work history at the third step to deny benefits. We now consider whether substantial evidence existed to support the ALJ's findings with respect to Listing 12.05C.

III.

The record contains undisputed evidence that Jackson's IQ scores are within the 60 to 70 range as required for the first prong of Listing 12.05C. In an effort to satisfy this first prong, Jackson submitted intelligence testing from a 2004 court-ordered psychological evaluation. The examiner, Mr. Nunez, reported that Jackson had a verbal IQ of 60, a performance IQ of 73, and a full scale IQ of 65. In addition, school records from Jackson's childhood indicate a verbal IQ score of 67.

Jackson also satisfied the second prong of Listing 12.05C, presence of a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05. The ALJ determined that Jackson suffers from severe impairments of depression and diminished intellectual function. Moreover, the evidence in the record reveals that Jackson has been diagnosed by a number of clinicians as suffering from (1) major depressive disorder with psychotic symptoms, (2) psychosis, (3) anxiety disorder, and (4) personality disorder. The record is also

6

filled with evidence of Jackson's significant, work-related limitations including marked restriction of daily-living activities, and difficulties in maintaining social function, concentration, persistence, and pace.

To the extent that the ALJ based its determination on a failure to satisfy the first two prongs of Listing 12.05C -- the IQ-score requirement and the presence of another impairment -- such a decision was not supported by substantial evidence. As such, we are left to determine whether substantial evidence supports the finding that Jackson has failed to establish the final deficits-in-adaptive-behavior requirement.

Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. Atkins v. Virginia, 536 U.S. 304, 309 n.3 (2002).

In support of this prong, Jackson submitted evidence that she has deficiencies in the areas of functional academic skills, social/interpersonal skills and communication, self-care, safety, and health. With respect to the area of functional academic skills, Jackson testified that she was in special needs classes, that she dropped out of school in the tenth grade, and that she has been unable to obtain her GED. Moreover, she reads at a sixth-grade level, and her cognitive functioning has been

7

evaluated as within the "mildly mentally retarded range of intellectual functioning."

In this case, the ALJ found no evidence of deficits in Jackson's adaptive functioning on the grounds that there was no documentation to support her testimony that she was in special education classes and that it found her testimony on the matter to be incredible. Jackson argues that this finding is not supported by substantial evidence in the record and that evidence submitted to the Appeals Council further contradicts this finding.

During the ALJ proceeding, Jackson's representative requested an extension of time to submit additional evidence in support of these allegations, but was unable to obtain Jackson's school records prior to the ALJ ruling because of the age of the records. When Jackson did ultimately retrieve the report of the special education review committee, she submitted a copy to the Appeals Council. These school records from the Freeport Public School District indicate that Jackson was identified as a special needs student as early as the seventh grade. What is more, they demonstrate that further academic testing during that time showed Jackson to be severely deficient in her intellectual abilities, and in particular, reported her as having a verbal IQ of 67. While the Appeals Council acknowledged receipt of the records, it did not provide any explanation for discounting the

records apart from summarily stating that it "found that this information does not provide a basis for changing the Administrative Law Judge's decision."

Not only did these forms provide documentation that the ALJ's decision was lacking and eliminate the ALJ's very reason for denying Jackson's claim, they also reinforced the credibility of Jackson's testimony. Moreover, information reflected in the school record is directly material to the final prong of Listing 12.05C -- the question of whether Jackson suffered "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P., App'x 1, § 12.05. We cannot say that substantial evidence supports the finding that Jackson failed to establish this prong where new and material evidence submitted to the Appeals Council contradicts both the ALJ's findings and underlying reasoning, and the Appeals Council failed to provide any reason for disregarding this additional evidence. In this situation, our proper disposition is to remand pursuant to sentence six of § 405(g) which authorizes a remand upon a showing of new material evidence. 42 U.S.C. 405(g).

IV.

For the reasons above, we remand the case for consideration of the new and material evidence.

REMANDED